In the Matter of the ESTATE OF James
A. WHITE, Incompetent.

Jimmy Wayne WHITE, Guardian of the
Estate of James A. White,
Incompetent, Appellant,

v.

William Jonathan DELANO,
Jr., Respondent.

No. 13175.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 3, 1984.

Ronald J. Fuller, Rolla, for appellant.

Charles T. Smallwood, Williams, Smallwood & Crump, Rolla, for respondent.

TITUS, Judge.

William Jonathan Delano, Jr. (claimant) on February 4, 1983, filed a $15,777.14 claim in the Probate Division of the Circuit Court of Phelps County against the Estate of James A. White, Incompetent. Mr. White had been officially declared incompetent on August 5, 1982. The claim was predicated on a $4,000 promissory note dated May 5, 1953, and signed by James A. White and J. Virgie White. The note was payable to W.J. Delano, claimant's father, who endorsed it to claimant "about 1958." The promissory note provided the $4,000 was to be paid in 40 monthly installments of $100 each, commencing June 10, 1953, "with interest from date at the rate of six % per annum. Interest payable monthly." Jimmie Wayne White, guardian of the incompetent's estate, filed a motion to disallow the claim because the same was barred by the 10-year statute of limitations. § 516.110(1) RSMo 1978. Following a hearing on the matter on February 25, 1983, the

court entered its order allowing the entire claim. An appeal to this court ensued.

■ Claimant, via his claim and testimony, represented he was the sole owner of the note as his individual "personal asset" since it had been assigned to him by his father "about 1958," some five years after it was made. In so doing, claimant disclaimed any ownership of the note prior to assignment and at no time asserted he was ·endowed with any personal knowledge as to what had transpired anent payments vel non on the note prior to its assignment to him. Where, as here, the estate pleaded the claim on the note was barred by the statute of limitations, claimant should not have been permitted to introduce into evidence any credits self-indorsed on the note without proving them and showing when they were made where the claimed payments bear dates prior to the running of the statute. *Sugent v. Arnold's Estate,* 340 Mo. 603, 606, 101 S.W.2d 715, 716[2] (1937); *Simpson v. Davis,* 130 S.W.2d 666, 667[4] (Mo.App.1939). Consequently, endorsements of payments on the note from June 3, 1953, to March 25, 1954 (there were none following the latter date), did not prove themselves nor did they operate to toll the statute.[1] 54 C.J.S. Limitations of Actions § 326, p. 431. But all of the foregoing be as it may, it is of no avail to the estate as the note (Exhibit 1) was introduced and received into evidence without objection by the estate.

We now consider claimant's Exhibit 6 which the court nisi admitted into evidence over the estate's objections. The estate said this was error and we agree. Exhibit 6 was no part of the promissory note and was not made a part of the filed claim. The exhibit consists of 11 sheets of lined loose-leaf notebook paper which are stapled together at the top left corner. All lettering and figures are handwritten. In chronological order by dates, the first sheet of the exhibit (actually numbered "7") bears the title "Note and Interest James A. White and Virgie White." Each sheet of

---

1. The back side of the note also showed 13 "Interest Charges" to and including December

12, 1968, which claimant and his counsel erroneously referred to as "interest payments."

the exhibit has three vertical lines drawn thereon to form three vertical columns. The first or left column consists of monthly dates for each month of the year commencing with "4/3 to 5/3/54" and terminating with "1983 1/3 to 2/3." The second or middle column is labeled "Interest" and purports to show the interest charged on the unpaid balance of the note for each month listed in the first column. The third or right column, labeled "Balance," is intended to show the total balance due on the note for each monthly period; also listed in the third column are purported credits given the makers for money, services and materials paid or furnished by James A. White, the incompetent, to W.J. Delano Oil Company, the "business" of the claimant.

Section 490.680 RSMo 1978 provides: "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

■■■ In construing § 490.680 it has been observed that simply because a record is in writing and part of a financial transaction, it is not automatically qualified as a business record under the Uniform Business Records as Evidence Law. The reason for recognizing a business record as an exception to the hearsay rule is the presumptive verity of routine recording of business transactions done on a regular basis at times close to the transactions recorded. The foundation which warrants the presumption of verity must be laid to qualify the record for admission. *Mitchell v. St. Louis Argus Publishing Company,* 459 S.W.2d 1, 6[10–12] (Mo.App.1970). If it appears, however, that the record has been made and kept solely for a self-serving purpose of the party offering it in evidence, it is the duty of the trial court to refuse its admission. *Kitchen v. Wilson,* 335 S.W.2d 38, 44[5] (Mo.1960). Albeit it is said that a

trial court possesses wide discretion in determining whether the requirements of § 490.680 for admission are met, the trial record should reveal evidence of compliance with each requirement of the law before any deference be accorded the ruling of the court nisi. *State v. Graham,* 641 S.W.2d 102, 106[8] (Mo. banc 1982). Ere proper admission of records under § 490.680 can be made, it is incumbent upon the party offering them to demonstrate the mode and the times of their preparation and the fact the records were really made in the regular course of business in compliance with the statute. *Finkel v. Hoel-Steffen Const. Co.,* 631 S.W.2d 645, 648[3] (Mo. App.1981).

As shown on Exhibit 6, except as hereinafter noted, the last credit given the incompetent was for a $150 payment made December 12, 1968, or some 14 years before the claim was filed. Thereafter the exhibit shows no other purported payments on the note until a "12/72" payment of $5.00 was credited. Following this the exhibit shows an alleged $5.00 payment made in each December from 1973 to and including December 1982. (The latter "payment" would have been credited some four or five months after Mr. White had been adjudged incompetent). In other words, but for the $5.00 annual "payments" above noted, the ten-year statute of limitations would have run on the note in December 1978.

■■■ After noting the $150 payment on the note in December, 1968, supra, claimant testified the incompetent continued to furnish labor and services albeit no record thereof was maintained. Claimant said that incompetent, subsequent to 1968, performed services. "Several times a year" although Exhibit 6 as seen, supra, shows no credits therefor in the three years following 1968. In reference to the "services" entries on Exhibit 6 made after 1968, claimant testified "I have no way of ascertaining exactly when they were prepared. They were prepared at different times." In viewing Exhibit 6, claimant, when asked if the payment entries were made during each period shown, answered: "No. No.

No, they were prepared in bunches. We didn't post it every month." While asserting that following December 1968 the incompetent made keys, did welding, repair work and "a lot of different things" during the entire period concerned, "all of which were not properly documented ... the $5 payment [credited as a payment on the note each year] is an estimate of the work that he did during that period" because claimant had no bills or records to show "what his services were or anything about it." Claimant admitted none of the $5.00 credits appearing on Exhibit 6 were for cash paid by the incompetent, but represented services performed which he "estimated the value at $5." When asked if the $5.00 credit entries in the exhibit were made because services were performed or "to keep the statute of limitations from running on the note," claimant stated: "There were two purposes. One, the services were performed. Obviously, I know that it does keep the statute of limitations from running." The claimant, who said he was appearing and claiming "personally" and not on behalf of the company or firm for whom the incompetent apparently performed the "services", acknowledged that "a few days" before filing his claim in the instant matter he conferred with the estate's counsel anent the note and was told it "was outlawed because there was no payment after December the 12th, 1968." When then asked if parts of Exhibit 6 were prepared subsequent to that meeting with the attorney, claimant answered "Possibly." Also regarding the $5.00 annual credits, when asked if he "arbitrarily ... just picked that figure out and stuck [it] in there," claimant responded "That is correct."

The endorsement of a partial payment upon a note or in an outside record (Exhibit 6) will not, in and of itself, toll the running of the statute of limitations. The burden is on him who seeks to uphold the right of action to show that such endorsement or payment was made by or with the consent of the payor. Mere entries of credits without the consent of the payor is ineffective to check the opera-

tion of the statute. *Brown v. Brown*, 5 S.W.2d 644, 645[1] (Mo.App.1928). If money, not the property of the debtor, is applied as a payment of the debt after the statute of limitations has run, it does not serve to revive the debt because the debtor has no interest therein and the money so paid has only the effect of extinguishing the debt pro tanto. *Simpson v. Davis*, supra at 667[8]. Moreover, paper or bookkeeping entries of credits do not by themselves constitute payments of debts unless the payments are actually made thereby. *Security Trust Company v. Sherwood Homes, Inc.*, 436 S.W.2d 776, 778[3] (Mo. App.1968); 70 C.J.S. Payment § 32, at p. 243. There may have been evidence in the record of payments on the notes by the incompetent via credits on and prior to December 12, 1968, but there was no competent evidence that the subsequent $5.00 yearly credits were made with the consent of the incompetent. A party cannot make evidence for himself by his own declaration not part of the res gestae or through writings which are not prepared in conformity with the Uniform Business Records as Evidence Law. The reason for such a rule is the inherent untrustworthiness of such declarations and writings and the probability that their introduction into evidence would open the door to frauds, perjuries and manufactured evidence. Cf. *Fallert Tool & Engineering Co. v. McClain*, 579 S.W.2d 751, 758[17] (Mo.App.1979).

As previously seen, § 490.680 provides that a record of an act, condition or event is competent evidence only if the record "was made in the regular course of business, at or near the time of the act, condition or event." Our recasting of claimant's testimony concerning Exhibit 6, supra, clearly shows the entries made thereon were not entered in the regular course of business at or near the time of the happening of the event purportedly recorded. The claimant had no way of ascertaining when the exhibit entries were made because they "were prepared at different times ... in bunches" and were not posted "every month." Services allegedly performed by the incompetent were not

recorded at the time of their supposed rendition at various unknown times throughout the year and were arbitrarily given a $5.00 per annum value by the claimant irrespective of the kind, quantity or quality thereof. Moreover, some entries on Exhibit 6, relating both to interest charges and credits, were "Possibly" made after claimant had been advised by counsel that his claim was outlawed because of the statute of limitations. A promissory note legally imports a promise to pay in money—nothing else. Credits given on the note subsequent to December 1968 for supposed and unspecified services rendered, instead of money paid, necessarily rested on an independent agreement of the debtor which was not here proven. *Sutton v. Libby,* 201 S.W. 615, 617[1–2] (Mo.App.1918). It is clear that Exhibit 6 was not admissible under § 490.680. Its various sheets were not made in the regular course of business but also they were not made at or near the times of the various acts, events or condition which they purport to record. *Bolling Company v. Barrington Company,* 398 S.W.2d 28, 30–31[1] (Mo.App.1965); Lauer, Business Records as Evidence in Missouri, 1964 Wash.U.L.Q. 24, 32–33.

The judgment is reversed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.