**Peter J. DANNA, Peter J. Danna, Jr., and Michael L. Danna, Plaintiffs–Appellants,**

v.

**Francis A. CASSERLY, Defendant–Respondent.**

No. 53892.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 6, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 4, 1989.

Application to Transfer Denied Feb. 14, 1989.

Brown, James & Rabbitt, St. Louis, for defendant-respondent.

SIMON, Judge.

This is an appeal from a jury verdict in favor of respondent, Francis A. Casserly, an attorney, in a civil action for legal malpractice regarding appellants' (Peter J. Danna, Sr., Peter J. Danna, Jr., and Michael L. Danna) purchase of an Illinois limited partnership known as Dunsford Terrace, Ltd.

On appeal, appellants raise four points contending that the trial court erred in: (1) denying appellants' motion for mistrial because the jury had been given improper and unauthorized instructions in that: (a) the verdict form did not conform to MAI, and (b) the bailiff gave an unauthorized oral instruction in violation of § 510.300 RSMo (1986); (2) admitting respondent's exhibits C and D and respondent's expert's opinion based on exhibits C and D in that the evidence was incompetent, irrelevant and immaterial, the exhibits were hearsay, unidentified and lacked proper foundation, and thus the expert's opinion based on the exhibits was improper and prejudicial; (3) denying appellants' motion for new trial because the jury's verdict was against the greater weight of the credible evidence and there was no credible evidence to support respondent's contention that the sale of the limited partnership interests were exempt under Chapter 409 RSMo (1986); (4) excluding appellants' exhibits 18, 19 and 20 because they constituted competent, relevant and material evidence in establishing that respondent was collaterally estopped from disputing the issue of whether a commission was paid in connection with the solicitation of the sale of the securities to appellants. We reverse and remand.

The record reveals the following facts which we view in a light most favorable to the verdict, considering only that which supports it, and disregarding contrary evidence and inferences. *Lane v. Cape Mutual Insurance Company*, 674 S.W.2d 644, 645[1] (Mo.App.1984). Appellants owned Park Clayton Apartments in St. Louis, Missouri, along with other partners, for approximately seven or eight years until it was sold in 1979. Thereafter, in the sum-

Campbell and Campbell, St. Louis, for plaintiffs-appellants.

mer of 1979, Michael Danna and Peter Danna, Jr., were introduced to George Pennell, president of Leslie Enterprises, Inc., a corporation involved in real estate developments, investments and construction. Pennell set up a meeting with the two brothers to propose real estate investments to them.

As a result of this meeting, Peter Danna, Jr. invested in Hidden Oaks limited partnership, an apartment complex in Jacksonville, Florida. Additionally, in September or October, 1979, all three appellants invested approximately $11,000 or $12,000 through Pennell in Garden Park limited partnership, an apartment complex in Carbondale, Illinois.

In December, 1979, Michael Danna and Peter Danna, Jr. again met with Pennell, and Pennell's associate, Robert Dare. Pennell and Dare proposed another limited partnership investment—Dunsford Terrace, Ltd., an apartment complex in Jacksonville, Florida, across the street from Hidden Oaks. Pennell and Dare were seeking investors to convert the apartments to condominiums, which Pennell would manage.

The Danna brothers were given a pro forma of the property—a form used to describe the accounting, financial, and other conditions about Dunsford Terrace based on anticipated facts. On the pro forma the price of Dunsford Terrace was listed as $520,000 plus $50,000. At trial, appellants alleged the $50,000 on the pro forma indicated the quoted commission price. The building had a $420,000 loan and if they invested they would be assuming the present loan. At the bottom, the cost of refurbishing and the anticipated profitability of the condominium conversion was shown. Pennell and Dare informed the brothers they would have to invest a total of $150,000. Michael Danna testified that $50,000 of the total was to be Dare's and Pennell's commission. Dare and Pennell told the brothers they could expect an 8½% return on their investment within three months. The agreement would provide for a return of appellants' investment and then a 60/40 split of the profits—60% going to appellants and 40% to Dare and Pennell.

The brothers discussed the investment with their father. All three decided to invest as limited partners in Dunsford Terrace, Ltd. At trial, Michael Danna testified that Peter Danna, Sr. was able to reduce the commission to $40,000; thus, their combined investment was $140,000. Individually their investments were as follows: Peter J. Danna, Sr., $46,666.66; Peter J. Danna, Jr., $46,666.67; and Michael L. Danna, $46,666.67. Dare and Pennell each invested $100 as general partners.

On January 18, 1980, Peter J. Danna, Sr. and his wife, Harriet, met with respondent, Casserly. Peter Danna, Sr. had known Casserly socially since 1939 or 1940. They also officed in the same building. Peter Danna, Sr. told Casserly that he and his sons were going to buy some real estate in Florida—apartments they were going to turn into condominiums. He asked Casserly to review the partnership documents that his son, Michael, would bring him later.

On January 21, 1980, Michael Danna brought several documents to Casserly including the proposed limited partnership agreement, the proposed certificate of limited partnership, George Pennell's resume and business statement on Leslie Enterprises, Inc., and Robert Dare's personal business statement. Whether Casserly received the pro forma of Dunsford Terrace, Ltd. was disputed at trial.

The proposed limited partnership agreement and proposed certificate of limited partnership were prepared by Doug March, attorney for Pennell and Dare. Casserly reviewed the documents and negotiated some changes in the wording of the documents with March.

On January 24, 1980, all three appellants and Pennell met with Casserly in his office. The final draft of the limited partnership and certificate of limited partnership included some of the changes Casserly had made. The documents were signed that day by all three appellants and Pennell with Casserly as a witness.

On February 1, 1980, Casserly sent a bill to appellants for 9.8 hours of services rendered for Dunsford Terrace, Ltd., a total of $588.00, which was paid by appellants. Appellants did not request the further service of Casserly.

In July, 1980, 5 months after the limited partnership was formed, appellants were made aware of a price list of additional financing that was needed to continue the condominium conversion of Dunsford Terrace. However, none of the appellants made any further investments. Ultimately, in August, 1980, there was a default on the mortgage, the property was foreclosed and the appellants lost their investment.

Appellants thereafter brought suit against Casserly. At trial, appellants alleged that Casserly advised them that the acquisition by them of the limited partnership was legal and their investments were adequately protected under the agreement. Appellants relied on Casserly's advice by purchasing limited partnership interests for the aggregate sum of $140,000; $40,000 of which was immediately paid as a commission to third parties for arranging the transaction. Casserly failed to advise them that such limited partnership interests involved the sale of securities which, under the provisions of Chapter 409 RSMo (1986), are required to be registered. Since the securities were not registered, the sale was illegal. If appellants had been advised of the illegality of the sale, they would not have purchased limited partnership interests. Thus, as a direct result of Casserly's negligence, appellants purchased unregistered securities which are now worthless.

Since appellants' second point is dispositive of this appeal, we shall address it initially. Appellants contend that the trial court erred in admitting respondent's exhibits C and D, and his expert opinion based on exhibits C and D because the evidence was incompetent, irrelevant, and immaterial in that the exhibits were hearsay, unidentified, and without proper foundation, and the expert's opinion based on those exhibits was therefore improper and prejudicial.

At trial, exhibit C was first introduced by respondent during his cross-examination of Michael Danna. Respondent alleges exhibit C is a copy of the 1980 partnership tax return for Dunsford Terrace, Ltd. - The following was the extent of testimony elicited about exhibit C:

Q. Let me show you defendant's Exhibit Number C, it's a 1980 partnership return for Dunsford Terrace. Was that furnished to you?

A Yes, it was.

Q And would you look thru the whole thing, I want to be sure that that is an accurate copy of the return.

MR. CAMPBELL: Well, your Honor, I don't think he can testify to that. He can testify if it was a copy of what was given to him, unless it's shown he prepared the return and filed the return, we don't know what was filed.

Q Is that a return, a copy of return given to you and that is accurate, as it was given to you?

A As far as I know it's accurate.

Later, during respondent's expert's testimony, respondent presented exhibit C to his expert. Appellants objected to respondent's use of exhibit C because its identity had not been established, it was not in evidence, no foundation had been laid and it was "rank hearsay." This objection was overruled and respondent's expert proceeded to testify and answer hypothetical questions using exhibit C in his testimony. Appellant continued to maintain his same objection thereafter. Exhibit C was not given to the jury for their examination during deliberation.

Respondent introduced exhibit C, the alleged copy of the 1980 partnership tax return for Dunsford Terrace, Ltd., to show that a commission was not paid on the purchase of the partnership interests. If a commission was not paid then the limited partnership interests were not securities and not required to be registered.

Respondent offered exhibit C into evidence, relying on the truthfulness and veracity of the contents of the return—specifically, to prove that a commission was not paid. Therefore, exhibit C constitutes

hearsay in that it was introduced to prove the truth of a matter asserted therein, and unless it falls within one of the hearsay exceptions, it was improperly admitted and improperly relied on by respondent's expert.

No mention was made at trial of the exception under which exhibit C was admitted, however, in their brief and in oral argument, respondent contends it was admissible (1) under the Uniform Business Records as Evidence Act (§ 490.680 RSMo (1986)) and/or (2) as an admission through appellant Michael Danna's testimony that exhibit C was accurate.

To render a document admissible in evidence under the Uniform Business Records as Evidence Act, there must be testimony from one or more qualified witnesses of its identity, mode of preparation, and that it was made in the regular course of business, at or near the time of the act, condition, or event in evidence, and that the sources of information, method and time of preparation were such as to justify its admission. *Kennedy v. Broken Associates, Inc.*, 381 S.W.2d 39, 43[5, 6] (Mo.App.1964); § 490.680 RSMo (1986).

Respondent cites *McCallaster v. Priest*, 422 S.W.2d 650, 659[15, 16] (Mo. banc 1968) for the proposition that the court has considerable latitude in determining the admissibility of business records. However, the trial record should reveal evidence of compliance with each requirement of the law before any deference be accorded the ruling of the court. *Matter of Estate of White*, 665 S.W.2d 67, 69[2–4] (Mo.App. 1984).

At trial, Michael Danna testified that he had been furnished with a copy of the return and when asked "Is that a return, a copy of return given to you and that is accurate, as it was given to you?", he responded: "As far as I know it's accurate." Respondent contends that this testimony was enough to satisfy the requirements of the business records exception. However, simply because a statement is in writing and part of a financial transaction, it does not automatically qualify as a business record. The reason the business record

exception to the hearsay rule is recognized is the presumptive verity of routine recording of business activities done on a regular basis at times close to the transaction recorded. To qualify for admission the foundation which warrants the presumption of verity must be laid. *Mitchell v. St. Louis Argus Publishing Co.*, 459 S.W.2d 1, 6[9–12] (Mo.App.1970).

■ Here, Michael Danna was a limited partner of Dunsford Terrace. Michael Danna did not prepare or sign the document, nor did any other appellant. In fact, no partner's signature, limited or general, appears on exhibit C. The only signature was that of Sheridan L. Pulley, CPA. Neither Pulley nor an agent of Pulley, nor anyone else testified as to the document's identity, its filing or mode and time of preparation.

Even if Michael Danna was qualified to testify as to its mode of preparation, since personal knowledge is not a requirement, the record does not reveal any testimony elicited as to the mode of preparation, the source of information contained within the document, the qualification of Sheridan L. Pulley, or the method and time of preparation.

The record must also reflect that the document was prepared in the regular course of business. Respondent incorrectly relies on *Gardner v. Bernard*, 401 S.W. 2d 415, 420[1–4] (Mo.1966), in support of their contention that tax returns are admissible without a requisite foundation for business records when there is no suggestion of any impropriety in connection with any of the record.

*Gardner* was an action to enforce an irrevocable trust account against the settlor-trustee's executor. Files and records, identified as being continuously in decedent's possession, contained copies of income tax returns. Longhand work sheets also found in the files corroborated the returns. The copies of the returns were admissible as the best evidence available to the plaintiff who had shown that the originals were unavailable. The record is void of any showing that the copies of the income tax returns came in under the busi-

ness records exception. The ledger sheets and checks, identified by the company president, were admitted under the business records act. *Id.*

Here, the alleged foundation was totally inadequate to qualify exhibit C for admission under the business records act.

Additionally, respondent contends that Michael Danna's testimony was an admission which dispensed with the need for compliance with such foundational requirements.

Respondent relies on *Albertson v. Wabash R. Co.*, 363 Mo. 696, 253 S.W.2d 184, 189[6, 7] (1952), which defines an admission as a conscious or voluntary acknowledgement by a party of the existence of certain facts relevant to the cause of the party's adversary, a statement against interest, unfavorable or inconsistent with the facts now claimed by the party making the statement. Although factually distinguishable, the principle in *Albertson* clearly applies.

■ Initially Michael Danna was asked if he would look at the entire document to be sure it was an accurate copy of the partnership tax return for 1980. However, this question was objected to and respondent's counsel rephrased his question, asking, "Is that a return, a copy of return given to you and that is accurate, as it was given to you?" This question did not call for Michael Danna to testify as to the accuracy of exhibit C. The question implied that exhibit C was indeed accurate. The record or lack of a record indicates that Michael Danna had no basis to vouch for or doubt its accuracy. The question does not establish Michael Danna's knowledge of the accuracy of exhibit C. The questions is basically, "Is that a return ... as it was given to you?" The phrase "... a copy of return given to you and that is accurate ..." merely modifies or identifies "a return." Therefore, respondent's counsel in the question indicated that the copy of the return is accurate and Michael Danna replied: "As far as I know it's accurate." Clearly, this does not constitute a conscious or voluntary acknowledgement as to the accuracy of exhibit C. Further, the answer merely recites "as far as I know" and the extent

of his knowledge is not a part of this record. Thus, Michael Danna's response is not an admission of a party.

■ Inasmuch as Michael Danna's testimony is not an admission, neither can it be considered a judicial admission where he did not testify unequivocally and understandingly to a material fact peculiarly within his own knowledge. *Rodgers v. City of St. Louis*, 688 S.W.2d 42, 43[1–3] (Mo.App.1985).

■ Therefore, exhibit C was improperly admitted and respondent's expert should not have been allowed to base his testimony on exhibit C which was hearsay and therefore incompetent evidence. *Skiles v. Schlake*, 421 S.W.2d 244, 248[5, 6] (Mo. 1967). The verdict director required the jury to find that the limited partnership interests were securities required to be registered. If no commission was paid the securities were exempt from registration. Except for exhibit C and the testimony of respondent's expert, the record reflects no other evidence to support a finding that no commission was paid. Casserly's testimony indicates that he was not aware of whether a commission was paid. Thus, exhibit's C admission and respondent's expert's reliance on exhibit C was clearly prejudicial.

■ Exhibit D is a prospectus of Dunsford Terrace, Ltd. Respondent presented exhibit D to Michael Danna during cross-examination. Michael Danna testified it was prepared after the formation of the limited partnership. He also testified that he did not remember receiving the entire document. Exhibit D was not submitted to the jury during deliberation. Further, the record does not reveal that exhibit D was presented to respondent's expert or relied on by the expert during his testimony. Thus, appellants were not prejudiced by exhibit D's brief introduction during Michael Danna's testimony. *Iota Management v. Boulevard Investment Co.*, 731 S.W.2d 399, 411[4, 5] (Mo.App.1987).

We will briefly address appellants' other points on appeal.

Appellants allege that the trial court erred in denying their motion for mistrial because: (a) the verdict form did not conform to MAI; and (b) the bailiff gave an unauthorized oral instruction to the jurors.

■ The verdict form originally submitted to the jury allowed the jurors to only find in favor of appellants. Clearly, this was not prejudicial to appellants. *Wilborn v. Williams*, 555 S.W.2d 44, 46[3] (Mo.App.1977).

Upon discovery of the erroneous verdict form, another verdict form, allowing a finding for either appellants or respondent, was submitted. Appellants also allege that this second verdict form did not conform to MAI. Our review reveals that the second submitted verdict form did conform to MAI. In any event, it was not prejudicial to appellants. *M.P. Industries, Inc. v. Axelrod*, 706 S.W.2d 589, 592[3, 4] (Mo.App. 1986). Further, it is unlikely that such proceedings will reoccur on retrial.

Appellants also contend that the bailiff gave an unauthorized oral instruction to the jurors. During deliberation, the foreperson opened the door to ask if a few of the jurors could get a drink of water. One juror asked, in the presence of all jurors, what would happen if deliberation continued. The bailiff replied, "the Judge will have to call you into the courtroom for further instructions." The bailiff asked the juror at what stage they were and the juror replied that they were not getting anywhere. The bailiff then said, "there's a lot of money and effort that goes into these things, you should try."

Without discussing the effect the unfortunate communications between bailiff and jurors had on the outcome of the verdict, it is sufficient to expect that such an incident will not occur on retrial.

■ Appellants' contention that the trial court erred in denying their motion for new trial because the jury verdict was against the greater weight of the evidence is an issue for the trier of fact, not an appellate court. *Borden v. Phillips Petroleum Co.*, 541 S.W.2d 53, 56[2] (Mo.App.1976). This point is without merit.

Finally, appellants allege that the trial court erred in excluding appellants' exhibits 18, 19 and 20 because they establish that Casserly is collaterally estopped from disputing the issue of whether a commission was paid on the purchase of the limited partnership interests.

Exhibit 18 is an order from the United States District Court for the Eastern District of Missouri in the case of *Peter J. Danna, Sr., et al. v. Robert S. Dare, et al.*, ordering rescission of Dunsford Terrace, Ltd.'s limited partnership interests. The order indicates that the interests are securities that come within the parameters of § 409.301 RSMo (1986). Exhibit 19 is a settlement agreement between the parties in the prior suit and exhibit 20 is the consent judgment.

In *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719[10, 11] (Mo. banc 1979), our Supreme Court listed the following factors to consider in determining whether the application of collateral estoppel is appropriate:

> (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.... Most courts have added a fourth factor ... whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. (citations omitted).

*Id.*

■ Casserly was not a party to the federal litigation. Thus, the issues are whether Casserly was in privity with a party in the prior suit and whether he had a full and fair opportunity to litigate the issue in the prior suit.

It is settled law that privity within the meaning of the doctrine of issue preclusion is privity as it exists in relation to an identity of interests in the subject matter. It is not established from the mere fact that persons may happen to be interested in the same question, or in proving or disproving the same state of facts. *American Polled*

*Hereford Assoc. v. City of Kansas City,* 626 S.W.2d 237, 241[5] (Mo.1982).

Clearly, Casserly was not in privity with defendants, Robert and Nancy Dare, in the prior suit. Further, he did not have a full and fair opportunity to litigate the issue in the prior suit. The trial court properly excluded appellants' exhibits 18, 19, and 20.

Judgment reversed and remanded.

DOWD, P.J., concurs.

SIMEONE, Senior Judge, dissents in separate opinion.

SIMEONE, Senior Judge, dissenting.

I respectfully dissent.

I believe that the introduction into evidence of exhibit C as permitted by the trial court, even though the principal opinion holds that it is hearsay, was not prejudicial to the appellants. I do not believe that exhibit C, under the traditional principles of evidence was truly hearsay. The whole theory of the common-law hearsay rule, as I understand it, is that if an extrajudicial statement or document is offered to prove the truth of the matter asserted therein, the matter is hearsay and inadmissible. However, if the extrajudicial statement or document is offered, not to prove the truth of the matter, but to show facts upon which an *opinion* may be based, the matter is non-hearsay and admissible. *See* 6 J. Wigmore, *Evidence,* § 1766, 1788 (Chadbourne ed. 1976). Under these principles I do not believe exhibit C was truly hearsay.

Furthermore, taking the evidence in the light most favorable to the verdict in favor of the respondent, Mr. Timothy N. Vujnich, an expert in securities and tax law, and a former commissioner of securities of the state, testifying for respondent stated that under Missouri law, § 409.402(b)(9), one exception from registration is based upon the type of transaction involved. If there is no public solicitation and "there are no commissions paid," the transaction is exempt from registration. The expert was presented with various documents including the 1980 partnership return, exhibit C, and indicated that he had reviewed them. He was then asked a lengthy hypothetical question, which included a question concerning the filed return, exhibit C. In answer to the hypothetical question, he answered that in his opinion, "I do not believe [respondent] violated a standard," and that based upon all the documents, the securities would be exempt from registration.

Even if it could be argued that exhibit C may be hearsay, the experienced trial court properly instructed the jury on the issues of attorney negligence and on whether the "defendant [respondent] failed to advise and inform plaintiffs that said certificates of limited partnership interest were unregistered securities that were required to be registered under Missouri law before being sold in Missouri." The jury found the facts to be that the certificates were not required to be registered before being sold and that the respondent did not fail to advise and inform the appellants that the certificates were required to be registered under all the evidence. The instructions given were in accordance with the law and the evidence.

Because I find no prejudicial and reversible error, the jury verdict and the judgment entered thereon should, in my opinion, be affirmed.

I therefore respectfully dissent.