Terry Lee NICKELS, et al., Appellants,

v.

Rita Jane NICKELS, et al., Respondents.

No. 17357.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 9, 1991.

Application to Transfer to
Supreme Court Denied
Oct. 30, 1991.

Ina Ruth McKune, Rolla, for appellants.

John Z. Williams, Rolla, and Thomas W. Millington, Springfield, for respondents.

MONTGOMERY, Judge.

The first appeal in this case appears in *Nickels v. Cohn,* 764 S.W.2d 124 (Mo.App. 1989). We held that the trial court properly determined, among other issues, that plaintiffs had the right to specific performance of a preemptive covenant in a quit claim deed between the parents of plaintiffs. The preemptive covenant resulted from the parents' property settlement agreement in their dissolution of marriage action.

In the first appeal we affirmed a determination of the trial court that its judgment on two counts of plaintiffs' petition was a final judgment for purposes of appeal under former Rule 81.06, now repealed. Because of our decision, one issue remained to be litigated—the purchase price for the land in question and the amount of damages, if any, to which plaintiffs were entitled. It is that issue before us now.

The remaining issue was tried on August 17, 1989. The relevant portion of the judgment entered on December 19, 1990, provided:

IT IS, THEREFORE, THE ORDER, JUDGMENT AND DECREE of this Court that:

1. Upon payment by Plaintiffs, Terry Lee Nickels and James Gary Nickels, of ONE HUNDRED FORTY THOUSAND NINE HUNDRED FOURTEEN DOLLARS AND TWENTY CENTS ($140,914.20) as hereinafter set forth, Defendant, Christy L. Cohn, Personal Representative of the Estate of Harvey E. Nickels, deceased (hereinafter 'P.R.'), shall execute to Plaintiffs, Terry Lee Nickels and James Gary Nickels, a Personal Representative's Deed conveying all right, title and interest of Harvey E. Nickels, deceased, to the following described real estate in Pulaski County, Missouri:

[legal description]

Said payment shall be made within fifteen (15) days after this Judgment becomes final if it is not appealed or within thirty (30) days following filing with the Circuit Clerk of the mandate resulting from the final determination of any appeal of this Judgment. Notice by regular mail of the payment shall be made by Plaintiffs to the attorneys of record for each of the Defendants. If said amount is not so paid, Plaintiffs shall be determined to have elected not to exercise the pre-emptive right to purchase which is the subject of this litigation.

From this portion of the judgment plaintiffs appeal presenting five points of error.

Facts revealed in *Nickels, supra,* will not be totally repeated. However, reading of that case is helpful for a background of the case. We relate only those facts necessary for our decision.

From *Nickels, supra,* we paraphrase these facts: Plaintiffs, Terry Lee Nickels and Connie N. Nickels, are husband and wife. Plaintiffs, James Gary Nickels and Norma N. Nickels, are also husband and wife.

Dr. Harvey E. Nickels died on March 19, 1986, leaving as his heirs and devisees Arthur Joe Cohn, Christy L. Cohn, Rita Jane Nickels, James Gary Nickels, Terry Lee Nickels, and Darrell Gene Nickels.

Defendant Rita Jane Nickels (now Campbell) was the surviving spouse of Harvey E. Nickels, deceased. Plaintiffs, James Gary Nickels, Terry Lee Nickels, and Darrell Gene Nickels (not a party), are the sons and only surviving children of Harvey E. Nickels, deceased. Defendants Arthur Joe Cohn and Christy L. Cohn (stepchildren) are devisees of all real property owned by Harvey E. Nickels at the time of his death pursuant to the last will and testament of Harvey E. Nickels which has been duly admitted to probate by order of the Probate Court of Pulaski County, Missouri, in May, 1986.

Defendant Rita Jane Nickels (now Campbell), was the personal representative of the Harvey E. Nickels Estate. She has now been replaced by Christy L. Cohn who is a party in that capacity and individually.

On or before 1960, Harvey E. Nickels was married to Wanda L. Nickels. They owned real property located in Pulaski County, Missouri, a 227–acre parcel of realty referred to in the record as 'the Prewitt farm'.

On April 26, 1968, the marriage of Harvey E. Nickels and Wanda L. Nickels was dissolved. Pursuant to a property settlement agreement, Wanda L. Nickels agreed to quitclaim to Harvey E. Nickels the Prewitt farm, subject to the covenant that, if Harvey E. Nickels desired at any time to sell the property, he was to first give the parties' three sons, i.e., Terry Lee Nickels, James Gary Nickels and Darrell Nickels, 15 days' notice of the desire so to sell. If within 15 days the sons, or any one of them, desired to purchase said property, said son or sons would have the right to do so upon the payment to Harvey E. Nickels of a sum equal to the original cost of the property ($38,500.00) plus the additional payment of the cost of capital improvements made on the property since the original purchase of the property by Harvey E. Nickels and Wanda L. Nickels.

Thereafter, pursuant to the aforesaid property settlement agreement, Wanda L. Nickels, on April 26, 1968, conveyed said property [the Prewitt farm] to Harvey E. Nickels, subject to the following covenant:

> If the Grantee desires at any time to sell this property he shall first give the parties' three sons 15 days notice of his desire so to sell and if within said 15 days they or anyone or more of them shall desire to purchase said property he or they shall have the right to do so upon the payment to the Grantee [of] a sum equal to the original cost of $38,500.00 paid for said property by the present parties to this agreement, plus the additional payment of the amount of capital improvements made on said property since the original purchase of said property by these parties to this agreement.

On September 29, 1990, the trial court made findings of fact and conclusions of law which form a proper basis for the assignment of error and for review on appeal. *Liebelt v. Commerce Bank of Springfield,* 703 S.W.2d 77, 78 (Mo.App. 1985).

Relevant findings of the trial court are:

3. ... Witness Joe Cohn established that the improvements to the Prewitt farm in 1968 were a barn, shed, manager trailer, and a trailer occupied by Harvey Nickles [sic].

4. Direct evidence by the Cohn's [sic] and Helton's [sic] established that substantial improvements were made to the Prewitt farm beginning in 1971. A home was constructed for Nickels and completed in 1971–72 which consisted of approximately 2000 square feet with upper and lower living areas and a garage. In 1972–73, a major addition was constructed which added approximately 3,000 square feet for a total of 5000 square feet of living area to Nickles' [sic] home. The home, although in a bad state of repair and the object of considerable vandalism when viewed by the Court, was at one time a dwelling of large proportions with six bedrooms, six baths, sauna, recreation room, family room, living room, dining room, kitchen areas, and outside decks with numerous amenities. Other improvements added to the Prewitt farm included a farm manager's home consisting of frame construction with living room, kitchen, and three bedrooms, two small buildings, a hog house, water well, fencing, ponds, and other landscaping. It was not disputed that these substantial improvements were made.

5. Christy Cohn opined the value of improvements at $130,000. Plaintiff Terry Nickels opined the value of improvements at 'somewhere around $90,000.' and Plaintiff James Nickels opined the value of improvements at $45,000 to $60,-000.

6. No parties to this action were able to locate the original records reflecting the cost of the improvements which at one time may have been provided to Harvey Nickles [sic]..

7. The only known records available were those in the possession of Helton's [sic] and Maurice J. Alfermann, C.P.A.

8. Mr. Helton was a contractor who performed work for Harvey Nickels on the residence on the Prewitt farm and also improvements on a medical building of Dr. Harvey Nickles [sic] in Waynesville, Mo. Mrs. Helton maintained records for the construction. While the total sum paid by Harvey Nickles [sic] was about $87,500, the records of Heltons do not completely identify whether the sum paid was attributable to improvements at the Prewitt farm or the medical building. Helton's [sic] stated they began the construction to the improvements on the residence on the Prewitt farm first and received three payments totaling $39,856.21 (ie. $13,-657.79 on 2/28/73, $16,198.42 on 4/17/73, and $10,000 on 5/18/73) before any work commenced on the medical building. Helton's [sic] indicated approximately $20,000 was known to be applied to the medical building. The evidence did not establish which project received the remainder of the funds. The remodeling and improvements at the Prewitt farm were completed in September of 1973. This evidence establishes that at least $39,856.21 was expended by Harvey Nickles [sic] for improvements to the residence on the Prewitt farm and that this sum was for the second stage of improvements to the home (ie. the 3,000 square foot addition). However, Helton's [sic] did not provide the sauna, jacuzzi, stained glass windows, painting, carpeting, or excavating performed during this construction.

9. Maurice J. Alfermann, a Certified Public Accountant, was retained by Dr. Harvey Nickles [sic] in the latter part of 1978 to prepare delinquent tax returns and future tax work. Alfermann obtained previous business records of Nickles [sic] from an accountant named Brooks and Alfermann prepared tax returns for Nickles [sic] for the years 1976 and 1977. Alfermann also represented Nickles [sic] with respect to negotiations with the Internal Revenue Service about tax problems and continued to prepare tax returns for Nickles [sic] until Nickles' [sic] death in 1986. Alfermann had what appeared to be copies of Nickles' [sic] tax returns from 1966 to 1975 but these were not signed or prepared by Alfermann. Alfermann prepared his files from information received from Nickles' [sic] prior accountant in the form of work papers, financial statements, depreciation schedules and other materials. Alfermann prepared Nickles [sic] tax returns from 1976 to Nickles [sic] death using this information. The original of the returns were forwarded to Nickles [sic] for signature and mailing to the IRS and copies maintained by Alfermann. Although Alfermann did not actually know that Nickles [sic] filed these returns, he did not receive any contact from the IRS that the returns had not been filed. Further, Nickles [sic] never indicated to Alfermann that the information in his files with respect to the cost of the improvements at the Prewitt farm was incorrect. A summary of the information in Alfermann's files was introduced as Defendant's Cohn Exhibit C and is attached hereto.

10. The Court finds that Defendant's Cohn Exhibit C states the improvement costs made by Dr. Nickels to the Prewitt farm with the exception that the Court finds that $39,856.21 was expended for the remodeling costs on the farm residence (pursuant to paragraph 8 of these findings of fact and conclusions of law) instead of the figure on the exhibit of $74,479.81. Objections to the introduction into evidence of this exhibit are overruled.

11. The Court finds the Pre-emption purchase price to be $140,914.20. This price is the result of the following itemized improvements and original cost of the farm:

| | |
|---|---|
| Original cost of farm residence | $ 35,687.99 |
| Remodeling cost of farm residence | 39,856.21 |
| Manager's residence | 16,090.00 |
| Water Well | 1,000.00 |
| Hog House | 280.00 |
| Two small farm buildings | 7,000.00 |
| Fence | 2,500.00 |
| | |
| Cost of improvements | $102,414.20 |
| Original cost of farm | 38,500.00 |
| | |
| Pre-emption purchase price | $140,914.20 |

12. The financial records of Dr. Nickels were in the custody of Maurice Alfermann an accountant. The records were maintained for tax purposes and by their nature are designed to reflect the cost basis of the farm and improvements thereto. The evidence of the witnesses clearly establishes that the improvements to the farm were in fact made. Alfermann maintained these records in the regular course of his business relationship with Dr. Nickels and relied on the records in the preparation of tax returns for Dr. Nickels. With the exception of the remodeling expenses to the farm residence as stated in the findings of the Court at Paragraph 8, no other probative evidence was presented to the Court or was available to the Court which contradicts the financial records maintained by Alfermann.

13. Since the evidence clearly establishes the fact that the itemized improvements were made and that they had value reasonable to the costs claimed, the Court finds the financial records possessed by Alfermann are admissable [sic] in this case for the trier of facts' consideration as they have independant [sic] guarantees of trustworthiness. These records in this form are considered by the Court with the other evidence and expressed opinions in evidence as a part of the Court's determination of value of the improvements. Where probative evidence establishes that the records may not accurately reflect the actual cost of improvements (ie. as in this case where the evidence does not establish the accuracy of the remodeling expenses as found in Paragraph 8) the trier of fact may consider the evidence outside the financial records as having greater weight.

Plaintiffs' first four points allege error in the admission of pre-1976 tax returns (Defendants' Cohn Exhibit A), copies of seven sheets of documents in Exhibit A (Defendants' Cohn Exhibit B), and a summary of the records contained in Exhibit A (Defendants' Cohn Exhibit C). Plaintiffs state the exhibits do not qualify as business records under "The Uniform Business Records as Evidence Law," §§ 490.660 to 490.690, RSMo.1986. We consider those four points together.

Defendants concede that if Defendants' Cohn Exhibit A is not admissible, their Exhibits B and C would likewise be inadmissible.

■ Review of this court-tried case is governed by Rule 73.01(c) and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Id.*

Section 490.680 states:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

■ Plaintiffs contend that CPA Alfermann was not able to testify as to the mode of preparation of pre-1976 tax returns and related documents in Defendants' Cohn Exhibit A. We agree.

The record supports the findings of the trial court in regard to the testimony of CPA Alfermann. (Paragraph 9—Findings). Additional testimony of CPA Alfermann (not reflected in trial court's findings) sheds light on the issue before us. He testified that he did not know what information had been used to prepare the pre-1976 tax returns and that he had never been given any figures to validate what was shown on those returns. He conceded that he had no personal knowledge of the information contained in the pre-1976 tax returns and his testimony was an interpretation of the information in the returns. He agreed that he was only able to say that these were the documents given to him by the prior accountant, and he could

not testify that the returns were even filed with the Internal Revenue Service.

Actually, the pre–1976 tax returns were apparently prepared by three different accountants. CPA Alfermann testified "Apparently '73 was prepared by Robert G. Kreig ... apparently the '72 return was prepared by a B.J. Menkhaus," and [file] "contains a copy of a 1974 return, again prepared by Robert Kreig, with its supporting schedules, including depreciation work sheets that may or may not have been attached to the original return as filed." Because CPA Alfermann received the pre–1976 returns from Mr. Brooks, the returns had been handled by three different tax preparers.

The file received from Brooks contained a "statement of financial condition" with the 1973 return, a manually prepared "balance sheet" with the 1972 return, and a "computer printout called a general ledger" with the 1974 return. CPA Alfermann relied on the cost or basis figures contained in the 1972, 1973, and 1974 return to prepare later returns. He stated that the statement of financial condition, balance sheet, and general ledger are documents not ordinarily filed with the tax return.

Plaintiffs timely objected to the testimony of CPA Alfermann and the introduction of Defendants' Cohn Exhibits A, B, and C on the basis of hearsay, speculation, best evidence rule, and lack of foundation. The objections were overruled.

The pre–1976 returns and related documents were critical to defendants on proof of cost of improvements since the record reflects no improvements were made after 1975 on the Prewitt farm.

In *Matter of Estate of White*, 665 S.W.2d 67, 69 (Mo.App.1984), we held:

In construing § 490.680 it has been observed that simply because a record is in writing and part of a financial transaction, it is not automatically qualified as a business record under the Uniform Business Records as Evidence Law. The reason for recognizing a business record as an exception to the hearsay rule is the presumptive verity of routine recording of business transactions done on a regular basis at times close to the transactions recorded. The foundation which warrants the presumption of verity must be laid to qualify the record for admission. If it appears, however, that the record has been made and kept solely for a self-serving purpose of the party offering it in evidence, it is the duty of the trial court to refuse its admission. Albeit it is said that a trial court possesses wide discretion in determining whether the requirements of § 490.680 for admission are met, the trial record should reveal evidence of compliance with each requirement of the law before any deference be accorded the ruling of the court nisi. Ere proper admission of records under § 490.680 can be made, it is incumbent upon the party offering them to demonstrate the mode and the times of their preparation and the fact the records were really made in the regular course of business in compliance with the statute. (Citations omitted.)

Defendants relied only upon the testimony of CPA Alfermann to lay a foundation for admission of Defendants' Cohn Exhibit A under § 490.680. His testimony does not demonstrate who prepared the pre–1976 returns or how the returns were prepared. He only made presumptions. The balance sheet, financial statement, and general ledger contained cost figures on improvements relied upon by him, yet those documents have the same shortcomings of the pre–1976 returns.

The record does not reflect the time of preparation of the pre–1976 returns and related documents, nor does it show they were prepared in the regular course of business of Dr. Nickels. Certainly, the 1976 and 1977 tax returns were not prepared in the regular course of his business. CPA Alfermann was hired in 1978 to prepare the two previous years' tax returns which had not been filed with the Internal Revenue Service. The balance sheet, financial statement and general ledger, according to CPA Alfermann, were merely found in the files with the pre–1976 tax return and the time of their preparation is unknown.

It further disturbs us that documents contained with pre–1976 tax returns such as a balance sheet, statement of financial condition and a general ledger were relied upon by CPA Alfermann as to cost figures. Such documents, according to CPA Alfermann, are not necessarily a part of tax returns. The author of such documents is not reflected in the record, but it is likely Dr. Nickels. The possibility of self-serving statements in such documents is strong. Obviously, it was advantageous to Dr. Nickels to establish a high cost basis on the farm residence and to establish substantial costs on other farm improvements for purposes of depreciation. *Matter of Estate of White, supra,* at 69.

Plaintiffs rely on the case of *Danna v. Casserly,* 763 S.W.2d 338 (Mo.App.1988), which involves the admissibility of tax returns. There, plaintiffs brought an action for malpractice against the defendant attorney in connection with their purchase of a limited partnership. Plaintiffs contended the trial court erred in the admission of defendant's exhibit C (1980 partnership tax return) and an expert's opinion based on that exhibit. Defendant offered exhibit C to show that no commission was paid on the purchase of the limited partnership interest. The only signature on the tax return was that of the preparing CPA. He, nor his agent, nor anyone else testified as to the document's identity, its filing or mode and time of preparation. The record did not reveal any testimony elicited as to the mode of preparation, the sources of information contained within the document, the qualification of the CPA or the method and time of preparation. The court held the foundation was totally inadequate to qualify exhibit C for admission under the business records act. *Id.* at 343. Because exhibit C was improperly admitted, the expert should not have been allowed to base his testimony on exhibit C which was hearsay and therefore incompetent evidence. *Id.*

Defendants rely on *Rossomanno v. Laclede Cab Co.,* 328 S.W.2d 677 (Mo. banc 1959), and *Finkel v. Hoel–Steffen Constr. Co.,* 631 S.W.2d 645 (Mo.App.1981). Neither case is persuasive.

In *Rossomanno,* the court held "that a witness may be competent to identify a business record and testify to the mode of its preparation even though he was not employed in the 'business' at the time the act, condition or event occurred, or was recorded. The testimony of the witness as to the 'mode of preparation' need not be based on personal knowledge." *Id.* at 683. There, the witness was an employee in a doctor's office and testified as to her employer's business records even though she was not employed in the doctor's business at the time the records were prepared.

We believe *Rossomanno* differs from the instant case. CPA Alfermann was never employed by Dr. Nickels to prepare the pre–1976 tax returns nor did he know who prepared or how the returns were prepared. He was only able to assume the tax returns and related documents were properly prepared on accurate information.

The same can be said of *Finkel, supra.* There the witness was the project manager of defendant who identified copies of defendant's invoices, time sheets and work orders of defendant. The witness stated that his employees, working under his direction, had prepared the exhibit in question, and he testified at length on the normal procedure for preparing the documents. CPA Alfermann gave no such testimony.

Plaintiffs further contend the pre–1976 returns were not shown to have been made in the regular course of business at or near the time of the act, condition or event. They cite *Starkovich v. Noye,* 111 Ariz. 347, 529 P.2d 698 (1974). There, an action was brought for reformation of a joint venture agreement. Defendants complained of the exclusion by the trial court of testimony by their accountant, Bigham. He testified he prepared income tax returns for 1965 for defendants, both individually and as a partnership, and that he made certain notes from information which he had received. Defendants urged that Bigham's notes and memoranda were business records and therefore admissible as exceptions to the hearsay rule. Arizona has

adopted the Uniform Business Records as Evidence Act. The court held:

> While ... its purpose was to liberalize the rules of admitting records into evidence, there is still the express requirement that a record must be made 'in the regular course of business' in order to avoid the claim of hearsay. Under a similar, although not identical statute, *see* 28 U.S.C. § 1732, it has been held that income tax returns are not admissible as business records. *Standard Oil Co. of California v. Moore*, 251 F.2d 188, 222 (9 Cir.1958). They are not made in furtherance of the taxpayer's business, but under the sanction of a federal statute at the behest of the Director of Internal Revenue and are only incidental to the taxpayer's business. Memoranda which are not typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls are not in the class of records made 'in the regular course of business.' (Citation omitted.)

The notes of Bigham were not made systematically or routinely by the defendants to reflect their business transactions with others, although they may have been made routinely by Bigham in his business of accounting. Since income tax returns are not themselves admissible as business records, supportive memoranda or notes can have no greater evidentiary dignity and must be held to be self-serving hearsay.

The balance sheet, statement of financial condition and general ledger fall within the category of supportive memoranda or notes condemned by *Starkovich*. There is no evidence that Dr. Nickels prepared such documents in the regular course of his business. Certainly, CPA Alfermann was unable to testify as to their origin.

We rule that Defendants' Cohn Exhibit A was inadmissible and therefore, Defendants' Cohn Exhibits B and C were inadmissible.

We next turn to the last point where plaintiffs contend "To the extent the trial court relied on an 'omnibus exception' to the hearsay rule in admitting the disputed documents, it was error."

Defendants tell us that Missouri courts have recognized the omnibus exception to the hearsay rule, and the trial court made the requisite findings for invocation of such rule.

In their brief defendants state:

> The 'Omnibus Exception' to the hearsay rule is specifically set forth in Rules 803(24) and 804(b)(5) of the *Federal Rules of Evidence*, 28 USCS Appendix Federal Rules of Evidence, Rules 803 and 804.... The rules in substance say a declaration not specifically covered by any other exception to the hearsay rule but having equivalent circumstantial guarantees of trustworthiness is admissible if the court determines (i) the statement is offered as evidence of a material fact, (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts, and (iii) the general purposes of the rules and the interest of justice will best be served by admission of the statement into evidence.

Perhaps the evidence in this case fits within the above-quoted "omnibus exception" to the hearsay rule. However, this state has adopted no similar rule as contained in the *Federal Rules of Evidence.*

We find no Missouri case which specifically discusses the "omnibus exception." Defendants refer us to *Liberty Fin. Management Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40 (Mo.App. 1984). There the court held that results of a survey would be admitted into evidence for the purpose of providing a foundation for an expert opinion. The survey showed certain computer problems consumed more time after a conversion to a different system than existed earlier.

The court stated:

> As pointed out in 5 Wigmore, Evidence § 1420 (Chadbourn Rev.1974), where the purpose of the rule against hearsay evidence is adequately safeguarded, an exception to the rule may arise. That is to say, cross-examination of a declarant,

when impossible, may lose its status as a *sine qua non* of admissibility when the trustworthiness of the declaration is otherwise established.

*Liberty,* 670 S.W.2d at 54.

The court continued:

This survey was scientifically designed by a mathematician-statistician with extensive experience in poll taking; there was evidence that the number interviewed was representative of the whole group; neither the interviewers or the interviewees knew the purpose of the poll and had no interest in the outcome.

Another factor in favoring the admissibility of evidence in this case is that it all came before the jury through the sponsorship of Mr. Wynne, a witness well qualified to express an expert opinion on the ultimate issue of Liberty's loss. Any expert witness represents the distillation of the total of his personal experiences, readings, studies, and learning in his field of expertise; and he may rely on such background, hearsay or not, as basis for his opinion.

*Id.* at 55.

We find no language in *Liberty* which leads us to conclude that Missouri has adopted the "omnibus exception" to the hearsay rule. Rather, we view *Liberty* as standing for the proposition that an expert witness may rely on hearsay evidence, on the facts in that case, in forming a basis for his opinion.

CPA Alfermann never offered opinions based on the pre–1976 tax returns and related documents. He merely lifted figures from such documents as a basis for preparing 1976 and subsequent tax returns.

We hold that Defendants' Cohn Exhibit A and therefore, Defendants' Cohn Exhibits B and C are inadmissible under the "omnibus exception" to the hearsay rule.

The only other evidence relating to cost of improvements on the Prewitt farm came from the records of contractor Helton and his testimony. As the trial court found, Helton performed work for Dr. Nickels on the residence on the Prewitt farm. He received three payments totaling $39,-

856.21 which did establish cost of improvements in that amount on the farm residence.

Defendants admit in their brief that the only evidence available to them (except the Helton testimony) was contained in Defendants' Cohn Exhibits A, B, and C. Since no other factual adjudication is possible on costs of improvements, this court may give such judgment as ought to be given. Rule 84.14; *Marks v. Marks,* 625 S.W.2d 700, 702 (Mo.App.1981).

We reverse the judgment as to payment of the sum of $140,914.20. We find that $39,856.21 is the only evidence on cost of improvements. With the original cost of $38,500, the correct payment from plaintiffs to defendant, Christy L. Cohn, Personal Representative of the Estate of Harvey E. Nickels, deceased, is $78,356.21.

We remand with instructions to the trial court to enter a judgment of $78,356.21 in place of the $140,914.20. In all other respects, the judgment is affirmed.

FLANIGAN, C.J., and MAUS, J., concur.