Alfred **FINKEL**, et al. d/b/a
**Williamsburg Steel Products
Co., Plaintiffs-Appellants,**

v.

**HOEL–STEFFEN CONSTRUCTION
COMPANY,
Defendants-Respondents.**

**No. 42014.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 15, 1981.

George E. Schaaf, Harold D. Carey, Clayton, for plaintiffs-appellants.

Russell Watters, St. Louis, for defendants-respondents.

SIMON, Judge.

This appeal arises out of a suit brought by Williamsburg Steel Products Company (Williamsburg), against Hoel-Steffen Construction Company (Hoel-Steffen), for breach of contract. Hoel-Steffen filed a set-off and counterclaim for damages. The jury found in favor of Hoel-Steffen and awarded damages totaling $10,454.02. Williamsburg appealed. We affirm.

Williamsburg contends that the trial court erred:. (1) in admitting into evidence business records which had not been properly qualified under the Business Records as Evidence Act; (2) in admitting evidence that related to damages that had not been specifically pleaded and which represented an incorrect measure of damages; (3) in submitting Hoel-Steffen's verdict director; and, (4) in submitting jury instructions that called for a single verdict.

Hoel-Steffen was the general contractor on a hospital construction project and Williamsburg is a manufacturer of metal products. Hoel-Steffen selected Williamsburg to provide metal components (primarily doors and door frames), for the hospital project. In December of 1974 Williamsburg commenced shipping doors and door frames to the hospital construction site. In January of 1976, Hoel-Steffen complained to Williamsburg that the goods did not comply with the contractual specifications. Hoel-Steffen claimed that grit, sand and cement had lodged underneath the frames' protective chemical coating (primer) applied during the manufacturing process by Williamsburg. Hoel-Steffen also claimed that several of the doors had been improperly fabricated, causing them to take on a "wavy" appearance.

Williamsburg contended that it was the painter's responsibility to remove any imperfections in the frames by lightly sanding them. The painter, Marvin Hawkins, testified that he was not required to sand all the way down to the bare metal. Hawkins had attempted to paint the frame after sanding them lightly, but the project's architect, acting as the owner's representative, rejected the frames because the light sanding had not removed the imperfections.

Williamsburg continued to deny responsibility for sanding the frames, but notified Hoel-Steffen that it would send someone to repair the frames. The policy of the local labor unions concerning out of state workers prohibited this from occurring. Hoel-Steffen had hired Marvin Hawkins to repair and re-prime the defective frames. Hoel-Steffen forwarded the bills for this operation to Williamsburg. As a result of the problem, Hoel-Steffen refused to pay Williamsburg the $8,885.00 owing on the

contract. Williamsburg brought suit for breach of contract, seeking damages in that amount. Hoel-Steffen counterclaimed seeking to recover damages from Williamsburg for the expenses incurred as a result of Williamsburg's breach of the contract. Although not specifically set,forth in their counterclaim, Hoel-Steffen also sought to recover damages for Williamsburg's non-delivery of twenty door frames. As a result of this non-delivery, Hoel-Steffen was forced to purchase replacement frames at a cost greater than the contract price.

Williamsburg's first point on appeal is that the trial court improperly admitted into evidence two exhibits, defendant's exhibits B and F. These exhibits contained photocopies of invoices that had been sent by Hoel-Steffen to Williamsburg, as well as other records of work performed on the frames and doors. The invoices listed Hoel-Steffen's costs of replacing or repairing defective or missing doors and door frames. Williamsburg claims that the evidence should have been excluded as hearsay because Hoel-Steffen failed to comply with the requirements set out in the Business Records as Evidence Act, §§ 490.660–490.-690 RSMo 1969.[1]

An objection to the introduction of a business record on the ground that it constitutes hearsay should be overruled if the record meets the requirements contained in § 490.680. *Rossomanno v. Laclede Cab Co.*, 328 S.W.2d 677, 681 (Mo.banc 1959). Section 490.680 provides:

"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

■ In determining whether the requirements of § 490.680 have been met, the trial court has wide discretion. *Hicks v.*

*Peniston*, 480 S.W.2d 522, 524 (Mo.App. 1972). Furthermore, testimony as to the method of preparing the record need not be based on personal knowledge. *Rossomanno, supra.* As stated by our Supreme Court, "[T]here must ... be a preliminary showing of the identity of the record, the mode and time (or times) of its preparation, and that it was made in the regular course of business; if this, and the 'sources of information,' are sufficient 'in the opinion of the court,' then the record, generally, is admissible." *Allen v. St. Louis Public Service Co.*, 285 S.W.2d 663, 666 (Mo.1956).

■ Williamsburg contends that neither exhibit met these requirements. At trial, Williamsburg did not object to any particular part of exhibit F; rather, Williamsburg made "blanket objections" to its introduction. When such objections are made, if any part of the exhibit is admissible, then the entire exhibit is admissible. *Allen, supra* at 667.

■ Jim Williams, Hoel-Steffen's project manager, was a qualified witness with respect to exhibit F. Included in the exhibit were copies of Hoel-Steffen's invoices, time sheets and work orders that related to the extra expenses incurred by Hoel-Steffen as a result of their problems with Williamsburg's materials. Williams also identified several invoices. He stated that his employees, working under his direction, had prepared exhibit F's contents in order to facilitate the billing process. Also included were Hawkins' invoices for his sanding and re-priming of the defective frames. Hawkins identified copies of his company's invoices, time and price sheets and work sheets. Hawkins testified at length on the normal procedure for preparing the documents.

Hawkins and Williams identified the invoices and other records; they testified to the time and methods of preparing the documents and that the records were made in the course of their regular business activities. This testimony was sufficient for the

---

1. All references shall be RSMo 1969 unless otherwise noted.

trial court, in its discretion, to have allowed the admission of exhibit F.

■ Exhibit B contained copies of Hoel-Steffen's invoices, work orders, work reports and time sheets that evidenced the measure of damages sustained as a result of errors in the fabrication of several frames. However, we need not decide whether Hoel-Steffen properly qualified exhibit B under the Business Records Act because no timely objection was made to its admission into evidence. Williamsburg's objection concerning exhibit B was made prior to Jim Williams' testimony on exhibit B. The trial judge overruled the objection after receiving assurances from Hoel-Steffen's attorney that Williams' testimony would lay the proper foundation for introducing the exhibit. When Hoel-Steffen moved for admission of exhibit B, Williamsburg did not object. Having failed to object at trial, Williamsburg may not do so on appeal. *Picarella v. Great Atlantic & Pacific Tea Co.*, 316 S.W.2d 642, 646 (Mo.App.1958). If Williamsburg believed that Hoel-Steffen had not met the requirements of the Business Records Act they should have objected to the offer of exhibit B into evidence. *State ex rel. State Highway Commission v. Cone*, 338 S.W.2d 22, 25–26 (Mo.1960). Thus, Williamsburg has not preserved this point on appeal.

Williamsburg next contends that the trial court erred in admitting exhibit F and other evidence that related to damages that arose out of Williamsburg's failure to deliver twenty frames.

This problem arose out of the dispute caused by Williamsburg's shipping of defective materials to Hoel-Steffen. Many of the frames required additional work before meeting the specifications, and Hoel-Steffen had not paid for them in full. In addition, Hoel-Steffen demanded that Williamsburg reimburse them for the additional work on the frames. Williamsburg advised Jim Williams that they would not ship the additional frames to Hoel-Steffen until they received the disputed payment. Williams informed Williamsburg that if they did not ship the frames, Hoel-Steffen would be forced to purchase them elsewhere. Williamsburg refused to ship the frames and Hoel-Steffen purchased the frames from H & G Sales, a local manufacturer, at a cost of $4,104. Williamsburg argues that these damages were not the logical and necessary consequences of their acts and, therefore, that the damages had to be specifically pleaded. Moreover, Williamsburg alleges that there was insufficient evidence to support an award of damages on this claim.

■ Williamsburg's contentions are without merit. When the damages claimed are special damages they must be specifically pleaded. Rule 55.19 (1977). Special damages are "the natural, but not necessary" result of the wrongful act. *Condos v. Associated Transports, Inc.*, 453 S.W.2d 682, 688 (Mo.App.1970). By contrast, "[g]eneral damages are those which the law would impute as the natural, necessary and logical consequences of defendant's wrongful act." *Id.*

■ Here, the facts support the determination that the cost of the frames constituted general damages. These damages were put in issue by the pleadings. Exhibit F contained evidence which tended to disprove that Williamsburg had fulfilled all of its contractual obligations to Hoel-Steffen, namely that twenty frames had not been delivered. Williamsburg agreed to supply the frames pursuant to specifications. The door frames were to be used on a construction project. Williamsburg knew that their failure to deliver the frames would cause Hoel-Steffen a completion problem. These damages were a natural, necessary and logical consequence of the dispute occasioned by Williamsburg's shipping of defective materials. Thus, the trial court was correct in allowing the introduction of the evidence relating to Williamsburg's failure to deliver the twenty frames.

■ On the question of whether the trial court erred in determining the proper measure of damages, we note that our court has stated, "where there has been part performance which falls short of the terms of the contract, the owner's measure of dam-

ages is ordinarily the reasonable cost of completion." *Edmonds v. Stratton*, 457 S.W.2d 228, 233 (Mo.App.1970). There was sufficient evidence upon which the jury could have based the conclusion that $4,104 represented the reasonable cost of completion. Although evidence showed that Williamsburg charged only $700 for the frames, Williamsburg's engineer admitted under cross-examination that a small custom order would be more expensive than a large standard order. Jim Williams stated that several of the frames had to be individually made. Moreover, Hoel-Steffen had been forced to pick H & G Sales, a small local manufacturer because H & G guaranteed a quick delivery date. Thus, there was sufficient evidence for the jury to award Hoel-Steffen the entire cost of purchasing the twenty frames.

 Williamsburg's next point is that the trial court erred in admitting into evidence exhibit B and testimony by Jim Williams concerning work performed by Gypsum Specialty, Inc. At trial, Williamsburg admitted sending several frames to Hoel-Steffen which were the incorrect sizes. Hoel-Steffen did not discover the problem until after six of the frames had been built into the walls. Removing the frames damaged the drywall around all six frames. Hoel-Steffen employed Gypsum Specialty, Inc. at a cost of $1,649.00, to repair the damaged walls.

Williamsburg argues that Williams was allowed to testify about the items in exhibit B that related to this situation without complying with the Business Records as Evidence Act. We do not agree.

We have already held that exhibit B was admitted into evidence without timely objection. Moreover, we are satisfied that Williams testified from personal knowledge as to the work Gypsum performed. The trial court did not err in allowing Williams' testimony.

 Williamsburg next contends that the trial court erred in submitting the verdict director on Hoel-Steffen's counterclaim. The court submitted MAI 26.02, but

added that the jury should award damages to Hoel-Steffen, "unless you believe that defendant is not entitled to recover by reason of ... [Williamsburg's verdict director]." While this addition, which does not conform to MAI, was made to both Hoel-Steffen's and Williamsburg's verdict director, the jury's verdict makes it clear that the jury was neither confused nor misled. Williamsburg does not allege, nor can we discern any prejudice arising from this added provision. See *Walkley v. Sears, Roebuck & Co.*, 536 S.W.2d 169, 171 (Mo. App.1976).

 Finally, Williamsburg argues that the trial court erred in not requiring the jury to reach separate verdicts on Williamsburg's claim and Hoel-Steffen's counterclaim. The trial court gave the jury three separate verdict forms. Two forms provided for the sole recovery by Williamsburg and Hoel-Steffen, respectively. The third form covered the possibility of the jury's finding for Hoel-Steffen on Williamsburg's petition and for Williamsburg on Hoel-Steffen's counterclaim. None of the forms instructed the jury on the possibility of finding in Williamsburg's favor on their petition and in Hoel-Steffen's favor on their counterclaim. The issue of separate verdicts has frequently been raised in our courts. See *Forsythe v. Starnes*, 554 S.W.2d 100, 111 (Mo.App.1977). An important consideration concerning this issue is that the jury's verdict completely disposes of all the claims raised by the parties. *Id.*

In the present case, the jury returned the following verdict:

"We, the jury, find the issues in favor of the Defendant and against the plaintiff and we assess Defendant's damages at $18,915.02

– $ 8,461.00 Less amount owed to Williamsburg Steel

$10,454.02 Net to Defendant

From this verdict it is clear that the jury disposed of all the claims raised by the parties. It is true that, "[t]he better procedure to be followed in such cases ... is to require the jury to return separate verdicts on plaintiff's claim and on the [defendant's] counterclaim." *Starnes, supra* at 111–12. Here, however, the jury was not confused;

the jury disposed of all the issues and its decision was clear. The trial court's instructions did not result in any prejudice. Rule 70.02(c).

For the foregoing reasons the judgment of the trial court is affirmed.

SATZ, P. J., and SMITH, J., concur.

**J.W.B., Respondent,**