**Tammy DEARDORFF and Allan R. Deardorff, Appellants,**

v.

**Frank BOHANNON, Respondent.**

**No. WD 40411.**

Missouri Court of Appeals,
Western District.

Oct. 18, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1988.

Application to Transfer Denied
Jan. 17, 1989.

Karen Heineman, Kansas City, for appellants.

Gabriel A. Domjan, Harrisonville, guardian ad litem.

C.E. Weedman, Harrisonville, for respondent.

Before COVINGTON, P.J., and NUGENT and GAITAN, JJ.

GAITAN, Judge.

This action is a consolidation of the Petition to determine Paternity (CV186–389 DR) and the Petition for Adoption (JU186–110A) submitted to the Circuit Court of Cass County. The petitioners for adoption, Tammy and Allan Deardorff, appeal the trial court's order denying the Petition for Adoption. The adoption was denied because the Deardorffs failed to secure the consent of Frank Bohannon, the child's admitted natural father, to the adoption or establish that Bohannon's consent was not required under § 453.040(5), RSMo 1986. In regard to the award of child support, the trial court determined that: 1) Tammy Deardorff was not entitled to reimbursement of child support for the period July 1984 through June 30, 1986; and 2) Tammy Deardorff was only entitled to reimbursement of child support at $20 per week for the period July 1, 1986 through December 12, 1987, plus one-half of the medical expenses related to the birth of Nicholas Bohannon (the child), and entitled to $30 per week in child support from Frank Bohannon.

Affirmed in part and reversed and remanded.

Frank Bohannon and Tammy McCarty (Deardorff) began living together in Belton, Missouri in 1981. Nicholas Bohannon was born out of wedlock on April 16, 1983. Tammy stated that while they lived together Frank ignored Nicholas and sometimes lost his temper and threw things when Nicholas cried at night, but that Frank was not abusive to Nicholas.

Mrs. Judd regularly babysat Nicholas after September 1983 at her home which was only a few blocks from Frank's house. Tammy moved out of Frank's house in July 1984, and took Nicholas with her. She lived with her mother in Pleasant Hill, Missouri, but moved back to Belton in March 1985 and lived with a friend and her son. From July 1984 to October 1985, Frank paid $250 in child support plus he paid for some babysitting.

Since June 1985, Tammy lived with Allan Deardorff in Belton. Frank saw Nicholas on some weekends during the end 1985.

Tammy would call Frank to see if he wanted visitation with Nicholas. In June of 1985, Tammy contacted the prosecutor to try to get child support from Frank. She did not proceed with this action at that time. She alleged that to do so she would have had to hire her own attorney and she did not have the money.

Frank stated that he paid $250 for support, $100 for babysitting, and over $800 for medical payments. He stated that he stopped paying support when Tammy kept Nicholas from him. Frank deposited 37 checks with the court in response to appellants' interrogatories. However, Tammy stated that most of those checks were in her handwriting, and she disputed Frank's figures. Tammy submitted a list of 37 checks as her exhibit. Checks dated January 1983 to June 1984 totaled $517.97; those from July 1984 to October 1, 1985 totaled $430.05; and the last checks dated in January 1986, for old medical bills, totaled $281.59.

A doctor's record of August 13, 1985 noted that Frank stated that Tammy was responsible for future bills. Frank testified that after October 1985 he offered no support, sent no letters or cards, and did not visit Tammy's house or ask her to bring Nicholas over for visits. He tried to request visitation, but Tammy was not willing to do so. Frank stated that he did visit Nicholas at the sitter's house for 15–20 minutes at Christmas, and in February and April 1986 for 10–15 minutes each. Mrs. Judd testified that Frank brought a Christmas gift and came by once or twice later.

Mrs. Judd stated that Frank's contacts with Nicholas tapered off. His visits went from every other weekend to once a month. Then he stopped picking Nicholas up for weekends. Frank called off and on, but in about April 1986, he stopped visiting or phoning.

Frank stated that Mrs. Judd never refused to let him see Nicholas and never stopped him from visiting or picking up Nicholas from her home but he respected Mrs. Judd's privacy rights. Mrs. Judd and Tammy testified that Tammy did not discourage Frank's visits to Mrs. Judd's

house, and even if she had tried, Mrs. Judd would not have paid any attention. Tammy stated that Frank called just before Father's Day, but she refused to let him have Nicholas because they already had plans. Tammy stated that she warned Frank that she and Allan Deardorff were was going to file for the adoption of Nicholas because Frank had not paid attention to Nicholas for almost a year. After Father's Day, Tammy refused Frank any more visitation. Frank testified that the babysitter's daughter asked him to stop calling her house in June 1986.

Frank testified that he carried medical insurance on Nicholas but did not tell Tammy because she did not allow him to see Nicholas and she did not ask if there was medical insurance on Nicholas. His insurance did not fully cover medical bills. Frank took out a loan to pay Nicholas' medical bills after Tammy refused to pay on the bills. Tammy testified that she knew he had insurance when she moved out, but Frank told her that the insurance was only for when he had Nicholas.

On July 1, 1986, Frank's affidavit and the paternity petition were filed. After Tammy was served, she talked to Frank once and he stated that he wanted custody of Nicholas, not just visitation. Tammy married Allan Deardorff on August 23, 1986. They filed a petition to adopt Nicholas on December 29, 1986. However, Frank was served on May 17, 1987, when the amended petition was filed.

A home study by the Department of Social services recommended the adoption as in the best interest of the child. However, at the hearing, Mr. Domjan, Nicholas' guardian ad litem, stated that he could not find willful abandonment or neglect because Tammy testified that during the statutory six (6) month period she had refused all visitation to Frank. Therefore, Mr. Domjan found that the requirements of § 453.040(5), RSMo 1986 had not been met, and thus Frank's consent was needed before Tammy and Allan Deardorff could adopt Nicholas.

■ The duty of this Court is to review the evidence presented to the trial court and determine that the trial court's judgment is supported by substantial evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The Deardorffs alleged that Frank Bohannon had willfully abandoned and neglected his minor son for a period of six(6) months prior to the filing of their Petition for Adoption. Section 453.040(5), RSMo 1986, provided that the consent of a parent is not needed if for a period of at least six (6) months immediately prior to the filing of adoption that parent has "willfully abandoned the child or, ... willfully, substantially and continuously neglected to provide him with the necessary care and protection." Both abandonment and neglect hinge on the intent or mental attitude of the natural parent. Intent can be established from that parent's conduct, the facts and circumstances. *See Lambertus v. Santino*, 608 S.W.2d 502, 505 (Mo. App.1980); *see also In re Adoption of LeGrande*, 581 S.W.2d 414, 415 (Mo.App. 1979). Appellants mention the issue of when the statutory six (6) month period begins, however, a discussion of that issue is not necessary. In determining intent, the court considers the conduct before, during and after the statutory period. *In re Adoption of LeGrande, supra*, at 415.

Although appellants cite a long list of cases where either or both abandonment and neglect were found, each case must be decided upon its own individual circumstances. *In re Adoption of LeGrande, supra*, at 415. In the case at bar, the trial court found that Frank Bohannon had not abandoned or neglected Nicholas. This Court must review the evidence in relation to both terms since the statute is disjunctive and either may obviate consent. *In re Adoption of Baby Boy W*, 701 S.W.2d 534, 545 (Mo.App.1985).

■ Abandonment is a "willful, positive act such as deserting the child; a willful delivery of the child with intention that the severence be permanent; a voluntary and intentional relinquishment of custody of the child to another with the intent to never again claim the rights or duties of a parent." *In re Adoption of Baby Boy W, supra* at 543. It may also occur when a

parent withholds the care, protection, love and presence of a parent without just cause or excuse. *Id.* The elements for abandonment were not met in the case at bar. Here Frank Bohannon did visit Nicholas and pay some support, although both were minimal. Additionally, Frank did not inexcusably withhold his presence as a parent, or his love and care from Nicholas. It was Tammy Deardorff who refused Frank any visitation after June 1986, and therefore Frank was unable to perform his parental duties. Thus, there was no abandonment.

■ In order to find willful neglect, there must be "a failure to perform the duty with which the parent is charged by law and by conscience." *In re Adoption of Baby Boy W, supra* at 544. An example of neglect occurs when the parent fails to provide care by not providing clothes, food or physical supervision; and particularly, by not providing support whether or not ordered by judicial decree. *Id.* In the case at bar, there was substantial evidence to support the trial court's finding that there was no neglect on the part of Frank Bohannon. As stated earlier, Frank did provide some minimal financial support to Nicholas. Also, Nicholas did visit Frank on some weekends, whereby on these visits Frank did provide care, food and physical supervision. Therefore, the trial court's finding of no neglect on the part of Frank Bohannon was also supported by competent and substantial evidence.

■ Appellants contend that the trial court erred in determining that Tammy Deardorff was not entitled to reimbursement for expenses from July 1984 through June 30, 1986. Additionally, appellants allege that it was error to award child support in the amount of $30 per week, with the arrearage payable at a rate of $20 per week. In first addressing the issue of reimbursement for expenses, appellants cited the common law doctrine of necessaries. This doctrine advocates that the father has the primary duty to support his minor children. *See Federbush v. Mark Twain Parkway Bank,* 575 S.W.2d 829, 831 (Mo. App.1978). However, appellants failed to note that it is the duty of both parents to

support their minor children. *Mueller v. Jones,* 583 S.W.2d 222, 224 (Mo.App.1979) (citing *Roberts v. Roberts,* 553 S.W.2d 305[1] (Mo.App.1977)). After paternity has been established, the trial court may divide the burden of past support for the minor child between both parents. *A.V. v. G.V.,* 726 S.W.2d 782, 784 (Mo.App.1987). In determining the proper division of these past expenses, the court should take into account each parent's ability to pay. *Id.* The amount of past support due is measured by the "reasonable needs of the child for food, clothing, medical and educational expenses as well as the ability of the father to pay." *Mueller, supra,* at 224. The award should not exceed the father's ability to pay, however, the court should consider his past and present earnings in reaching its decision. *Id.* (citing *Naeger v. Naeger,* 542 S.W.2d 344[2] (Mo.App.1976)).

■ Although the trial court and this Court found no willful neglect on the part of Frank Bohannon, the support furnished by Frank to his son was deficient. Therefore, this issue of reimbursement of expenses from July 1984 through June 30, 1986, is remanded for a determination of the total amount of expenses incurred and the division of those expenses between Tammy Deardorff and Frank Bohannon.

■ The last issue raised by appellants is the rate to be paid for current child support and the arrearage from July 1, 1986 through December 12, 1987. The trial court looked at the county chart to determine the rate of current support to be paid and the amount that should have been paid from July 1, 1986 through December 12, 1987. This Court recognizes that the chart has no precedential value and is only a guideline for practitioners. *Hogrebe v. Hogrebe,* 727 S.W.2d 193, 196 (Mo.App.1987). The record does not reflect how the rate of $20 per week for arrearages was determined. There are other factors that should be taken into account when determining the rate of child support. These factors are the father's primary responsibility for support, the financial resources of the custodial parent, and the financial resources and needs of the non-custodial parent. *See*

*Hogrebe, supra* at 195. Therefore, this last issue is remanded for a determination of the rate of current child support and the arrearage to be paid by Frank Bohannon.

The judgment of the trial court is affirmed in part and reversed and remanded.

All concur.