REBOUND, INC., Appellant–Respondent,

v.

Laverna M. PUGH, Conservator, the Estate of Barbara Bonner, Respondent–Appellant.

Nos. WD 49687, WD 49735.

Missouri Court of Appeals, Western District.

Nov. 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 1995.

Application to Transfer Denied Jan. 23, 1996.

Pat K. McGonigle, Kim S. Summers, Kansas City, for appellant-respondent.

Bruce A. Bailey, Warrensburg, for respondent-appellant.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and SPINDEN, JJ.

SPINDEN, Judge.

Neither party is satisfied with the probate court's decision concerning claims by Rebound, Inc.,[1] against the estate of Barbara Bonner for medical services to Bonner and her infant son, Jeremy. The probate court cut Rebound's claim for services to Bonner by about 42 percent and denied all of its claim for services to Jeremy. As to the claim for services to Bonner, we remand with instructions that the probate court clarify which of Bonner's expenses it deemed unreasonable or medically unnecessary. As to the claim for services to Jeremy, we reverse and remand with instructions that the probate court enter an order granting Rebound expenses for such services as the court deems reasonable and medically necessary.

On December 31, 1991, Bonner was admitted to a Warrensburg hospital for delivery of Jeremy, her first child. During delivery, Bonner and Jeremy suffered prolonged oxygen deprivation which resulted in severe brain damage to both. On February 10, 1992, Jeremy was admitted to Rebound. In the meantime, various hospitals treated Bonner until she also was admitted to Rebound on March 12, 1992.

On July 13, 1992, the probate court of Johnson County declared Bonner to be totally incapacitated and disabled. The probate court appointed Laverna Pugh, Bonner's mother, as guardian and conservator of Bonner's estate.

On August 5, 1993, Rebound filed two claims with Bonner's estate for the medical services it had rendered to Bonner and Jeremy. Rebound submitted a claim for $759,782.91 for health care, rehabilitative services and treatment provided to Bonner from March 12, 1992, through June 30, 1993. It claimed $131,176.31 for the health care, rehabilitative services and treatment provided to Jeremy from February 10, 1992, through July 31, 1992, when he was released from Rebound. The probate court, after a hearing on the claims, granted Rebound only $436,840 for services to Bonner and nothing for services to Jeremy.

In its appeal, Rebound asserts that the probate court abused its discretion by (1) denying its claim for services to Jeremy, (2) not granting all of its claim for services to Bonner, (3) excluding testimony of two of its witnesses, and (4) excluding from evidence Bonner's answers to interrogatories. Bonner's estate cross-appeals, contending that the probate court erred by (1) denying its

1. Rebound is now known as Relife Rehabilitation Network.

motion to dismiss Rebound's claim as untimely filed, (2) admitting into evidence Rebound's exhibits concerning its billings, (3) awarding Rebound $436,840 for services rendered to Bonner, and (4) granting a continuance to Rebound after the first day of hearing.

### Medical Expenses of Barbara Bonner

 Both parties complain that the probate court's award for services to Bonner was against the weight of the evidence. Rebound asserts that the probate court should have given it all that it claimed. Bonner's estate complains that the probate court awarded Rebound anything. Recovery for medical expenses requires proof that the services were necessary and reasonable. *Green v. Hastings*, 621 S.W.2d 549, 551 (Mo.App. 1981). Rebound asserts that the evidence established this, and the estate argues the contrary.

In its order, the probate court said:

[T]he court, having considered the pleadings, evidence and proof adduced, . . . enters its findings and judgments as follows:

. . . With respect to the claim for health care and rehabilitative services and treatment provided to Barbara Bonner against the estate and determines that said claim should be allowed in the sum of . . . $436,-840.00 . . . as a class 4 claim.

. . . .

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the claim of Rebound, Inc., for health care and rehabilitative services and treatment provided to Barbara Bonner is hereby allowed against the estate in the sum of . . . $436,-840.00 . . . as a class 4 claim, to bear interest at the legal rate from this date, and for the costs of this claim.

The probate court considered the testimony of Jean A. Bailey, Rebound's executive director, concerning the reasonableness of the charges and the testimony of Thomas J. McGuire, M.D., Rebound's medical director, concerning the necessity for the services. The probate court also considered 63 pages

of invoices and attachments [2] and a document referred to as "Summary of Charges." Each invoice appeared to be for the total charges for a month with additional pages attached giving an itemized listing of most, if not all, of those charges. Rebound's claim was for over 15 months of services provided to Bonner.

In cutting the claim for services to Bonner by about 42 percent, the probate court's order did not delineate which items it was denying. This makes our review virtually impossible. We are not suggesting that the probate court was wrong in giving Rebound only a part of its claim. We also recognize that, in cases in which the parties do not request findings of fact and conclusions of law, we are to view the evidence in a light most favorable to the probate court's judgment. Rule 73.01(a)(3). In this case, however, we simply have no means of knowing which charges the probate court denied, and Rebound has difficulty articulating an appeal.

The invoices and attachments listed numerous charges, such as per diem charges, pharmacy, medical supplies, medical equipment, laboratory, x-ray, CT scan, respiratory services, EKG/ECG, OP services, other prescription services, nutritional services, ultrasound, and feedings. We can only guess which charges the probate court found reasonable and necessary and whether the court's decision was against the weight of the evidence. Hence, we remand to the probate court to set out in its order which expenses it deemed to be unreasonable or unnecessary. We are not instructing the probate court to articulate in its order why it included or excluded portions of Rebound's claims. We need the court only to delineate which items it excluded as unreasonable or unnecessary.

### Bonner's Obligation for Jeremy's Necessaries

 Rebound contends that the probate court erred in denying its claim against Bonner's estate for health care, rehabilitative services and treatment provided to Jeremy. Rebound asserts that Bonner, as Jeremy's mother, had a common law duty to support

---

**2.** Several of the invoices and attachments provided in the legal file were illegible.

her son; therefore, Bonner's estate is liable for the child's "necessaries." The estate responds that the probate court properly denied this claim because Jeremy's father had the primary common law duty to support his son and Rebound never sought reimbursement from the father.

■ Recent case law,[3] amendments to the child support statutes,[4] and enactment of the Uniform Parentage Act[5] place in serious question the issue of whether this principle of common law has been abrogated. We need not resolve this issue, however, because the doctrine gave the father only the *primary* duty of support. *Deardorff v. Bohannon,* 761 S.W.2d 651, 655 (Mo.App.1988). Both parents have a duty to support their minor children. *In Interest of R.A.S.,* 826 S.W.2d 397, 399 (Mo.App.1992).

Because the probate court did not explain its reasons for not awarding any of Rebound's claim for services to Jeremy, we can only speculate as to the basis for that decision. In view of the testimony presented by Rebound concerning its services to the infant, a conclusion that no compensable expenses were incurred during the five-month period that he was at Rebound appears illogical. "[A] 'reasonable amount' standard necessarily suggests that *some* amount is reasonable." *Robinett v. Robinett,* 770 S.W.2d 299, 305 (Mo.App.1989) (emphasis in original).

We, therefore, reverse the probate court's judgment awarding nothing for services to Jeremy. We remand this judgment, too, with direction to the probate court that it either articulate its reasons for concluding that Rebound was not entitled to recover any amounts on this claim, or (if the court finds that Rebound is entitled to recover some amount from Bonner's estate) set an amount specifying which services constituted "necessaries" for which Rebound should recover.

## Excluded Testimony

■ In its next point, Rebound contends that the probate court abused its discretion in excluding the testimony of two witnesses. We disagree.

At the hearing on February 23, 1994, Rebound announced that it was ready and called two of its employees as witnesses. After they had finished testifying, Rebound asked the probate court to continue the case so that it could call Thomas McGuire, its medical director, to testify about the necessity for the services. Over the estate's objection, the probate court reluctantly continued the hearing to March 8, 1994, for the limited purpose of obtaining McGuire's testimony.

On March 4, 1994, Rebound asked the probate court for another continuance so McGuire or Janet E. Morgan, M.D., could testify about the necessity of Rebound's services. Its request did not mention any one other than McGuire or Morgan. The probate court continued the hearing to March 23, 1994.

When the hearing resumed on March 23, Rebound presented McGuire's testimony. Rebound then attempted to call two of its employees not mentioned in its continuance application. The probate court refused to hear Rebound's other witnesses.

■ The probate court was not obligated to grant Rebound's request for a continuance after the first day of hearing. A motion for continuance is a matter of judicial discretion. *Ronollo v. Jacobs,* 775 S.W.2d 121, 126 (Mo. banc 1989). We will not reverse a court's decision concerning a continuance unless we discern an abuse of discretion. *In re Interest of F.L.M., M.S.M., T.S.W., C.D.W., and B.M.W.,* 839 S.W.2d 367, 374 (Mo.App. 1992). We find no abuse of discretion in the probate court's limiting the scope of the continued hearing to receiving testimony by

---

**3.** See *Medical Services Ass'n v. Perry,* 819 S.W.2d 82, 83 (Mo.App.1991); *Johnson by Burns v. Johnson,* 811 S.W.2d 822, 825 (Mo.App.1991); *Hulse v. Warren,* 777 S.W.2d 319, 322 (Mo.App.1989); and *Stanton v. Abbey,* 874 S.W.2d 493, 497–98 (Mo.App.1994).

**4.** Section 452.340(1), repealed in 1988, recognized a "father's primary responsibility for support of his child." This language was deleted when the current statute, § 452.340, RSMo 1994, was enacted in 1988.

**5.** Sections 210.817 to 210.582, enacted in 1987.

McGuire or Morgan. Rebound's claim is without merit.

### Interrogatory Answers

■ Finally, Rebound asserts that the probate court abused its discretion by excluding from evidence answers to interrogatories by Bonner's husband, Wayne Bonner, answered on behalf of Bonner. Rebound argues that the answers were an admission of the reasonableness and necessity of Rebound's charges because Wayne Bonner admitted that Rebound's services to his wife were necessitated by the wrongful conduct of defendants in a separate medical malpractice action and that she had claimed Rebound's charges as special damages in that lawsuit. Rebound points particularly to the interrogatory answers in which Wayne Bonner said that his wife claimed $1000 a day as her medical expenses accrued at Rebound and that she sought reimbursement for examinations and treatments necessitated by the wrongful conduct of the defendants.

These answers did not establish the reasonableness or the necessity of Rebound's charges. They were not admissions of anything other than that Bonner was accruing medical bills by being Rebound's patient. Rebound's contention is without merit.

### The Estate's Motion to Dismiss

■ Bonner's estate contends that the probate court erroneously denied its motion to dismiss Rebound's claims because they were barred by § 473.433.1, RSMo 1994. The statute says:

Prior to the expiration of six months after the date of the first publication of letters, no personal representative shall be compelled to pay any claim presented to him or filed with the court; provided, however, that subsequent to the expiration of the time specified in section 473.360, no personal representative shall pay any claim except costs and expenses of administration, unless, within the time specified in sections 473.360, 473.363, and 473.367, said claim has been served upon the personal representative, and has either been filed with the court or acknowledged by the

personal representative in writing to be a just claim.

Chapter 473 governs decedent's estates. Bonner's estate, however, asserts that § 473.433.1 still is applicable to her conservatorship because of § 475.020, RSMo 1994. This statute says:

Where sections in chapter 473, RSMo, are specifically incorporated by reference by any provision of sections 475.010 to 475.370, they shall be applied as if "decedent" or "deceased" read "ward" or "protectee", "executor" or "administrator" or "personal representative" read "guardian", "conservator" and the like, as the case may be, as far as applicable to guardianships and conservatorships and not inconsistent with the provisions of sections 475.010 to 475.370. In other cases, where no rule is set forth for guardianships and conservatorships in sections 475.010 to 475.370, the rule regarding decedents' estates in this law shall likewise apply to guardianships and conservatorships when applicable thereto and not inconsistent with the provisions of sections 475.010 to 475.370, unless a contrary rule of court is duly promulgated or declared[.]

No provision in Chapter 475 specifically excludes application of § 473.433. It would appear that because Chapter 475 does not set forth a specific rule relating to service of a claim on the conservator, § 473.433 applies to this case. It requires personal service of the claim on the conservator before expiration of six months after the first publication of letters.

Rebound responds that § 472.433 is inconsistent with § 475.205 which says:

All claims against the estate of a protectee, whether they constitute liabilities of the protectee which arose before or after the conservatorship, or liabilities incurred by the conservator for the benefit of the protectee or his estate, may be filed in the probate division of the circuit court. After hearing, the probate division of the circuit court may allow a claim so filed, in whole or in part, or disallow it. An order allowing a claim has the effect of a judgment and bears interest at the legal rate, unless the claim provides for a different rate, in

which case the judgment shall be rendered accordingly.

We find nothing in § 475.205 which makes § 473.433 inapplicable. Rebound notes, however, that § 475.205 previously required personal service of a claim on the conservator, but the General Assembly amended the statute in 1980 to eliminate reference to service on the conservator. Rebound asserts that the estate's reading of the statute would, by judicial fiat, reverse the legislature's elimination of reference to service. We disagree. It is equally plausible that the General Assembly deleted reference to service of notice in § 475.205 because it knew that § 473.433 provided for the necessary service of notice.

Rebound further argues, however, that even if it had been required to serve notice of the claims on the conservator within six months after the first publication of letters, the conservator received notice through her attorney. We agree.

 The first publication of letters in this case was on July 20, 1993. Rebound filed its claims against the estate with the probate court on August 5, 1993. The probate court's docket entry for August 5 recognized Rebound's claim of $759,782.91 for services to Bonner and of $131,176.31 for services to Jeremy. The court's August 6 entry indicated that copies of the claim had been mailed to the estate's attorney. The conservator's attorney, therefore, received notice of the claims within six months of publication of letters.

Section 472.100.8, RSMo 1994, says:

If an attorney has entered his appearance in writing for any party in any probate proceeding or matter pending in the court, all notices required to be served on the party in the proceeding or matter may be served on the attorney and such service shall be in lieu of service upon the party for whom the attorney appears. Service on an attorney may be made by ordinary mail or by leaving a copy of any notice or paper at his office with his clerk or with an attorney employed by or associated with the attorney to be served.

Section 475.020 also says, "The provisions of chapter 472, RSMo, unless therein restricted to decedents' estates, apply to guardianships and conservatorships." This means that because the conservator's attorney received notice of the claims within six months after the first publication of letters, Rebound's claims were not barred. The estate's contention, therefore, is without merit.

### Admission of Rebound's Invoices

 Next, the estate contends that the probate court abused its discretion by allowing Rebound to submit its invoices and attachments because Rebound did not establish that they were business records pursuant to § 490.680, RSMo 1994. We disagree.

Section 490.680 says:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Rebound called Jean Bailey, Rebound's executive director, to lay a foundation for the exhibits as business records. She said that she was familiar with Rebound's charges for the services provided to Bonner and Jeremy. She said that she had determined Rebound's per diem charges for room and board, nursing, and therapies provided to patients. She said that Independence Regional Health Center submitted bills for ancillary services provided to Rebound's patients each month and that Rebound billed its patients for those services. Rebound posted its per diem charges daily, she said. She also testified that Rebound received the health center's bill on the third day of each month and that Rebound merged its per diem charges with the health center charges.

Bailey acknowledged that she did not prepare the billing statements. She said that Rebound's billing and corporate office in Hendersonville, Tennessee, prepared them. She did say, however, that she was familiar with and received copies of Rebound's

monthly billings for Kansas City patients in the ordinary course of Rebound's business.

 The probate court has much discretion in determining whether the requirements of § 490.680 have been met. *Finkel v. Hoel–Steffen Construction Company*, 631 S.W.2d 645, 648 (Mo.App.1981). Testimony as to the mode of a record's preparation need not be based on a witness' personal knowledge. *Id.*

Bailey's testimony was sufficient to establish a foundation for admission of the invoices and attachments as business records. The probate court did not abuse its discretion by admitting them.

### Granting Rebound a Continuance

 Finally, the estate contends that the probate court abused its discretion by granting Rebound a continuance of the hearing. The estate asserts that granting the continuance violated Rules 65.03, 65.04, and 65.05 because Rebound made its request orally without the estate's consent, the motion did not demonstrate that Rebound exercised due diligence in obtaining medical testimony, and the estate admitted that Rebound's witness, if present, would swear to the facts set out in the affidavit.

Rule 41.01(b) says:

> Rules 41, 54.18, 55.03, 56, 57, 58, 59, 60, 61, and 62 apply to proceedings in the probate division of the circuit court. The judge of the probate division may order that any or all of the other Rules 41 through 101 or specified subdivisions of the rules shall be applicable in a particular matter. Any such order shall specify the rules or subdivisions to be applied and a time for compliance with the order. The order shall be served upon all of the parties.

Rule 65 does not apply to probate proceedings unless the judge orders it in a particular case. The judge in this case made no such directive. The estate's contention is without merit. *See Estate of Ewing v. Bryan,* 883 S.W.2d 545, 546 (Mo.App.1994).

### Conclusion

Because the probate court did not distinguish which charges it found to be unreasonable or unnecessary and because we are not able to conduct a meaningful review of this claim, we remand to the probate court to set out in its order which expenses it deemed to be unreasonable or unnecessary. Because the probate court's not awarding anything for services to Jeremy appears illogical from the record before us, we reverse the court's judgment and remand for it to enter an order delineating which services it deems reasonable and medically necessary, or, if it deems none to be reasonable, it shall articulate the basis for that conclusion.

All concur.