954 S.W.2d 356 (1997)
In the ESTATE OF Barbara BONNER, An Incapacitated and Disabled Person.
REBOUND, INC., Appellant,
v.
Laverna M. PUGH, Conservator, Respondent.
Nos. WD 53127, WD 53271.
Missouri Court of Appeals, Western District.
July 15, 1997.
As Modified September 2, 1997.
Motion for Rehearing and/or Transfer to Denied September 2 and September 30, 1997.
Application to Transfer Denied November 25, 1997.
*357 Patrick Kevin McMonigle, Kansas City, for Appellant.
*358 Bruce A. Bailey, Warrensburg, for Respondent.
Before ULRICH, C.J., P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied September 2 and September 30, 1997.
EDWIN H. SMITH, Judge.
This is an appeal and cross-appeal from an order of the Probate Division of the Circuit Court of Johnson County partially allowing the claims of Rebound, Inc.[1] (Rebound), against the conservatorship estate (Estate) of Barbara Bonner (Bonner) for services rendered to Bonner and her son, Jeremy Bonner (Jeremy). In Rebound, Inc. v. Pugh, 912 S.W.2d 660 (Mo.App.1995) (Rebound I), Rebound appealed the trial court's order partially allowing its claim for services rendered to Bonner (Bonner claim), and totally disallowing its claim as to Jeremy (Jeremy Bonner claim). In Rebound I, we reversed and remanded, holding, in relevant part:
As to the claim for services to Bonner, we remand with instructions that the probate court clarify which of Bonner's expense it deemed unreasonable or medically unnecessary. As to the claim for services to Jeremy Bonner, we reverse and remand with instructions that the probate court enter an order granting Rebound expenses for such services as the court deems reasonable and medically necessary.
Id. at 661. Upon remand, the trial court entered its second order, in which it found that as to services to Bonner, the daily room and board rates and treatment costs were reasonable and necessary, but Rebound had failed to establish that any other "ancillary" services[2] were provided. As to Jeremy, the trial court found that his daily room and board charges were reasonable and necessary, but Rebound had failed to establish that either treatments or ancillary services were provided.
In its two points on appeal, Rebound generally alleges that the trial court erred in failing to allow the full amount of its claims as to both Bonner and Jeremy. In Point I, Rebound alleges the trial court erred as to the amount allowed on the Bonner claim because the evidence showed that the ancillary services were provided and medically necessary, and that the charges for the same were reasonable. In Point II, Rebound alleges the trial court erred as to the amount allowed on the Jeremy Bonner claim because evidence showed that the treatments and ancillary services were provided and medically necessary, and that the charges for the same were reasonable.
The Estate alleges four points on its cross-appeal. In Points I and II, the Estate alleges that the trial court erred in allowing Rebound any of the charges claimed as to Bonner and Jeremy, because the evidence was insufficient to find that the services were actually rendered and medically necessary, and that the amounts charged were reasonable. In Point III, the Estate claims that the trial court erred in basing its allowance on billing statements introduced at trial because they were admitted for the limited purpose of showing that the Estate had notice of Rebound's claims. In Point IV, the Estate alleges that the trial court erred in finding the Estate liable for the Jeremy Bonner claim, because Bonner was incapacitated when the services were rendered and could not enter into a quasi-contract, which the Estate contends is required under the doctrine of necessaries for a child.
We affirm.

Facts
Barbara Bonner was admitted to a Warrensburg hospital on December 31, 1991, for the delivery of her first child, Jeremy. Complications during the delivery resulted in prolonged oxygen deprivation for her and Jeremy, with both suffering severe brain damage.
Rebound, Inc., which is located within the Independence Regional Hospital, is a specialized neurological rehabilitation provider. *359 Rebound admitted Jeremy as a patient on February 10, 1992, and admitted Bonner on March 12, 1992. The probate division of Johnson County declared Bonner totally incapacitated and disabled on July 13, 1992. The court appointed Bonner's mother, LaVerna Pugh, as guardian and conservator of Bonner's estate. Jeremy did not show any improvement during the time he was at Rebound, and was discharged on July 1, 1992. He died on May 22, 1993. Bonner was still a patient at Rebound when it filed its claims, but has since been discharged and remains in a persistent vegetative state. Rebound submitted two claims to Bonner's estate for payment on August 5, 1993, for the health care, services and treatments provided to Bonner and Jeremy in the amount of $759,782.91 for Bonner, and $131,176.31 for Jeremy.
The Estate filed a motion to dismiss the claims on February 23, 1994. Two hearings were held, on February 23 and March 23, 1994, wherein Rebound called three witnesses, who were Rebound employees. The Estate's motion to dismiss was denied. Over the Estate's objections, Rebound introduced two exhibits, Exhibits 1 and 2, under the "business records exception," § 490.680.[3] When the trial court admitted Exhibits 1 and 2, which are billing statements from services provided for Bonner and Jeremy, it made the following ruling:
The Court is going to admit Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2. In doing so, though, the Court is admitting them for the purpose ofThe Court believes that it has been adequately established. HowOr what the basis of the claim is, the Court does notin admitting these, make any ruling as to whether or not the amounts that are claimed are reasonable in any fashion or whether there has been any proof that the services that are claimed have actually been provided. But the Court does believe that these are admissible for the purposes of showing the basis of the claim and giving the Estate notice of whatwhat is sought from it.
On June 30, 1994, the trial court entered its first order, which allowed Rebound $436,840.00 on Bonner's claim, and disallowed Rebound's claim as to Jeremy in whole.
On the appeal in Rebound I, we determined, inter alia, that the trial court did not err in admitting Exhibits 1 and 2 under the business records exception. However, we reversed and remanded the cause to the trial court, because in partially disallowing the claim against Bonner and disallowing the claim in whole against Jeremy, it did not distinguish which charges it found to be unreasonable as to Bonner or Jeremy.[4] On remand, the probate court entered its second order[5] on July 29, 1996, which allowed Rebound's *360 claim as to Jeremy in the amount of $44,066.04, and once again allowed Rebound's claim as to Bonner in the amount of $435,840.00.
Standard of Review
We review the cause under the principles set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Our standard of review is that we are to sustain the judgment of the probate court unless (1) there is no substantial evidence to support it, (2) it is against the weight of the evidence, (3) it erroneously declares the law, or (4) it erroneously applies the law. (citations omitted).
Matter of Robinson, 791 S.W.2d 844, 848 (Mo.App.1990). The Court of Appeals is required to consider the evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable inferences and disregarding all evidence to the contrary. Stoup v. Robinson, 933 S.W.2d 935, 936 (Mo.App.1996). We will not weigh the evidence, and because the trial court has the superior ability to judge the witnesses' credibility, we will defer to its findings. Id.

Discussion

I. Barbara Bonner Claim
In Point I of Rebound's appeal and the Estate's cross-appeal, both parties contend that there was insufficient evidence for the trial court to find the Estate liable in the amount of $436,840.00 for services provided to Bonner. Rebound alleges that the trial court erred by excluding all "ancillary" charges not included in the cost of room and board, nursing and therapy. It contends that there was sufficient evidence to order the Estate to pay for all of the services claimed, in the amount of $759,782.91. On the other hand, the Estate alleges that the trial court erred in allowing Rebound any amount as to the Bonner claim because there was insufficient evidence to show that services were provided and medically necessary, and that the charges were reasonable. Because both points deal with the sufficiency of the evidence to support the trial court's allowance of Rebound's claim as to Bonner, we will address them together.
Missouri courts have held that recovery for medical services rendered is dependent on an adequate showing that the services provided were medically necessary and the charges were reasonable. Research Medical Ctr. v. Estate of Thomas, 729 S.W.2d 42, 43 (Mo. App.1987); see also White v. American Republic Insur. Co., 799 S.W.2d 183, 191 n. 7 (Mo.App.1990) (stating "`[t]he usual rule is that a plaintiff may not recover damages on account of items of special damage such as here involved (the doctor bills and hospital bills) in the absence of proof respecting the reasonable necessity and reasonable value of those services'"). We have held that in establishing the reasonableness and necessity of services rendered, it is not necessary for a hospital to prove by expert testimony that each particular item was necessary to treatment, especially in the event that there is no allegation that any treatments are unnecessary. Heartland Health Sys., Inc. v. Chamberlin, 871 S.W.2d 8, 11 (Mo.App.1993).
*361 Rebound cites our holding in Research for the proposition that undisputed evidence of reasonable and necessary medical services requires the trial court to find the obligor liable for all of the services claimed. In Research, the medical center introduced three exhibits without objection from the estate: (1) a certification of corporate standing; (2) statement of account for services provided; and (3) pleadings and settlement documents. Research, 729 S.W.2d at 43. The medical center's account supervisor testified concerning the accuracy of the billing records and that the charges were fair and reasonable, all of which was found to be admissible. Id. The estate did not challenge or dispute the account supervisor's testimony. Id. As a result, this court held that because most of the oral evidence was undisputed and much of the evidence was documentary, the trial court would not be accorded the same amount of deference as would be the case of disputed oral testimony. Id. Thus, we held that it was against the weight of the evidence for the trial court not to allow the entire claim. Id.
Here, the trial court admitted four exhibits: (1) claims against the Estate for the care of Bonner and Jeremy; (2) Rebound's proposed plan of care for Bonner; (3) invoices from March 1992 to September 1992 for certain treatments Bonner received; and (4) a certificate of corporate good standing in Missouri. The Estate objected to all of the exhibits, with the exception of the certificate of corporate good standing. The trial court overruled all of the Estate's objections. Rebound called three witnesses to testify as to the exhibits: (1) Colleen Stewart, director of client services at Rebound; (2) Jean Bailey, executive director and regional vice-president of Rebound; and (3) Thomas McGuire, M.D., who was the director of Rebound's rehabilitation unit and supervisor of the care that Bonner and Jeremy received. Stewart, who acted as Bonner's "case manager," testified concerning the proposed plan of care Rebound developed after evaluating Bonner. Bailey testified as to the items billed to the Estate for Bonner's care and her belief as to the reasonableness of the charges. Dr. McGuire testified as to the medical services Rebound provided and the medical necessity of the care Bonner and Jeremy received. The Estate cross-examined each of these witnesses with respect to their knowledge of the necessity of care, reasonableness of cost and whether the services were actually provided.
Stewart testified that Bonner's proposed plan of care included treatments that might be subject to dispute as to their medical necessity for a patient in a vegetative state, i.e., occupational therapy, recreation therapy, spiritual counseling and social work services. While Bailey testified that she believed Rebound's charges to be comparable to those at similar health care facilities, she could not state any facts to support her conclusion. She testified that she had no knowledge as to the reasonableness of the ancillary charges. Dr. McGuire testified that after ninety days at Rebound, Bonner was determined to be in a persistent vegetative state. He testified that after that time, the therapies Rebound was providing were no longer medically necessary, but that many, although not all of the treatments were continued up until the filing of the claim. Based on this testimony, we find that in determining Rebound was not entitled to recover the full amount of its claims against the Estate, the trial court did not abuse its discretion and its finding was not against the weight of the evidence.
As was the case in Research, we find that the documentary evidence presented here could provide a basis for determining that the services were actually provided. However, this case is distinguishable from Research in that the trial court here was required to play a more significant role in the assessment of the credibility of the witnesses concerning their testimony about the documentary evidence, because, unlike in Research, the accuracy of the written records was put in issue by the Estate on cross-examination. For instance, Rebound introduced billing statements, which, for the most part, did not specifically itemize the costs associated with therapies allegedly provided for either Bonner or Jeremy. Further, no witness could testify as to what specific services were in fact rendered on any given day. Thus, because the oral testimony as to the *362 medical necessity and reasonableness of the services claimed was not uncontroverted, Stoup, 933 S.W.2d at 936, the trial court here was required to evaluate the witnesses' credibility in determining whether the services claimed were received, necessary and reasonable. As a result, the amount of deference that we accord its determination is not limited, as was the case in Research.
In challenging the sufficiency of the evidence upon which the trial court based its allowance, the Estate alleges that the trial court abused its discretion by determining that Rebound was entitled to recover any of its claim. However, as discussed, supra, the trial court had the opportunity to assess the credibility of the witnesses through cross-examination with respect to the necessity of the care and the reasonableness of the charges. It is clear from the record that at least some of Rebound's charges should be reimbursed, as we held in Rebound I, because the probate court's failure to allow anything for services provided is "illogical," based on the evidence. We find that the trial court's allowance of Rebound's claim against the Estate for services provided to Bonner was not against the weight of the evidence.
Point denied.

II. Jeremy Bonner Claim
Both parties claim in their Points II that there was insufficient evidence for the trial court to hold the Estate liable in the amount of $44,066.04 for services rendered to Jeremy. Rebound alleges that the trial court erred by including only the costs associated with room and board, and specifically excluding all other charges. It contends that there was sufficient evidence to order the Estate to pay for all of the services, amounting to $131,176.31. The Estate alleges that the trial court erred in allowing Rebound any amount as to its claim for services to Jeremy because there was insufficient evidence to show that the services were provided and medically necessary, and the charges reasonable. As both points deal with the sufficiency of the evidence to support the trial court's allowance on Rebound's claim for services provided to Jeremy, we will address them together.
Because the issues presented in the parties' respective points are substantially similar to those discussed, supra, we find that a lengthy discussion is unnecessary here. As was the case above, the appropriate amount Rebound should be allowed on its claim is based on whether the services were provided and were medically necessary, and the charges for the same were reasonable. White, 799 S.W.2d at 191 n. 7. Because the evidence Rebound presented was not undisputed, the trial court retained a great deal of discretion in determining the credibility of the witnesses. Stoup, 933 S.W.2d at 936. We find that the trial court's decision was not against the weight of the evidence when it partially disallowed the Jeremy Bonner claim. Likewise, we find that the trial court had the authority to determine that Rebound was entitled to at least some of the charges that it claimed with respect to Jeremy, as we held in Rebound I. After a careful review of the record, we find that the trial court's allowance of Rebound's claim in the amount of $44,066.04 for services rendered to Jeremy was not error.
Point denied.

III.
In its third point on its cross-appeal, the Estate claims that the trial court erroneously applied the law by basing its judgment as to Rebound's claims on evidence admitted at the hearing, Exhibits 1 and 2, for a limited purpose. At the time Rebound offered Exhibits 1 and 2, which are billing statements concerning Bonner's and Jeremy's accounts, the Estate objected, claiming that the exhibits did not fall under the "business records" exception to the hearsay rule because the witnesses did not have sufficient personal knowledge concerning the preparation of the statements. The Estate argued that although admitted, these statements were admissible only for the limited purpose of showing that the Estate had notice of Rebound's claims. In this respect, the trial court, in admitting both exhibits, stated, in relevant part:
[T]he Court does not, inadmitting these, make any ruling as to whether or not the *363 amounts that are claimed are reasonable in any fashion or whether there has been any proof that the services that are claimed have actually been provided. But the Court does believe that these are admissible for the purposes of showing the basis of the claim and giving the Estate notice of whatis sought from it.
In reviewing the court's statement, we find it did not specifically rule one way or the other on the admissibility of the exhibits to prove that the services in question were provided or that the charges for them were reasonable. Instead, the court, without ever ruling on these issues, admitted the exhibits to show the basis for the claim and the notice by the Estate. Counsel for the Estate did not insist on a ruling.
It is the responsibility of the objecting party to insure that the trial judge has heard and ruled on the objection and if this is not done, nothing is preserved for review. Reed v. Spencer, 758 S.W.2d 736, 738-39 (Mo.App.1988). Further, the burden is on the party raising an objection to insist on a ruling. Should counsel fail to do so, it is assumed that the objection has been overruled and the evidence is in the record for consideration. Sykes v. Bi-State Development, 716 S.W.2d 856, 858 (Mo.App.1986); Welch v. Welch, 633 S.W.2d 447, 450 (Mo.App.1982).
Powell v. Hickman, 793 S.W.2d 885, 892 (Mo. App. 1990). Because we find the trial court failed to rule on the Estate's objection and its trial counsel did not insist on a ruling, the objection is deemed overruled and the exhibits admitted without limitation. Id. at 892. This being the case, the trial court did not err in declaring or applying the law when it based its allowances, in whole or part, on the billing statements.
Point denied.

IV.
In its last point, the Estate alleges that the trial court erred as a matter of law by finding the Estate liable for services provided to Jeremy under the doctrine of necessaries. This doctrine holds that both parents have a duty to support their children, including providing and being liable for reasonable medical services for them. See, e.g., Rebound, 912 S.W.2d at 662; Deardorff v. Bohannon, 761 S.W.2d 651, 655 (Mo.App. 1988). The Estate contends that because Bonner was in a persistent vegetative state, she lacked the capacity to enter into a quasicontract, which it argues is required for the doctrine to apply. We disagree.
The Estate's contention that the doctrine of necessaries is founded on the existence of a quasi-contract is incorrect. The obligated party under the doctrine does not have to know of or assent to medical services for it to apply. Medical Serv. Assoc. v. Perry, 819 S.W.2d 82, 83-84 (Mo.App. 1991). Thus, we find the trial court here did not err in allowing Rebound's claim against the Estate for services rendered to Jeremy under the doctrine of necessaries.
Point denied.

Conclusion
The judgment is affirmed.
All concur.
NOTES
[1] Rebound, Inc., is now known as Relife Rehabilitation Network.
[2] Independence Regional Health Center provides ancillary services to Rebound, which includes laboratory and respiratory services, and those costs are billed to the patient through Rebound's accounting.
[3] Section 490.680 states:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.
[4] Rebound, 912 S.W.2d at 666, holds, in pertinent part:

Because the probate court did not distinguish which charges it found to be unreasonable or unnecessary and because we are not able to conduct a meaningful review of this claim, we remand to the probate court to set out in its order which expenses it deemed to be unreasonable or unnecessary. Because the probate court's not awarding anything for services to Jeremy appears illogical from the record before us, we reverse the court's judgment and remand for it to enter an order delineating which services it deems reasonable and medically necessary, or, if it deems none to be reasonable, it shall articulate the basis for that conclusion.
[5] The trial court's second order made the following findings:

4. For the time she was a patient at Rebound, Inc., Barbara Bonner was charged a base charge for room and board, nursing and all therapies. Such base charge is described as the "per diem" rate. From March 12, 1992, through April 30, 1993, the per diem rate was $1,035.00; and from May 1, 1993, through June 30, 1993, such per diem rate was $850.00. The total of the per diem charges is $481,375.00.
5. For goods, services, supplies and other items of care and treatment not included under the per diem rate, Rebound, Inc., charges additional amounts. Such additional amounts are described as "ancillary charges."
6. The claim of Rebound, Inc., includes amounts claimed for Barbara Bonner's per diem charges and amounts claimed for ancillary charges.
7. The per diem rates for Barbara Bonner were reasonable, and the care, services and treatment received in consideration of such rates were medically necessary and appropriate.
8. The claimant has failed to establish by the competent and credible evidence that any of the goods, services, supplies or other items of care and treatment for which ancillary charges are claimed were in fact even rendered or provided to or for Barbara Bonner as claimed.
9. Rebound Inc., has applied payments and adjustments totaling $44,535.00 to Barbara Bonner's account.
10. For the time he was a patient at Rebound, Inc., Jeremy Wayne Bonner was provided services on a fee for services basis. There was no base or per diem charge. Room and board were charged at the rate of $415.00 per day, and the total room and board charge is $58,100.00.
11. The daily room and board charges for Jeremy Wayne Bonner were reasonable, and such room and board was medically necessary.
12. Rebound, Inc., has applied payments totaling $14,033.96 to Jeremy Wayne Bonner's account.
13. Other than room and board, the claimant has failed to establish by the competent and credible evidence that any of the goods, services, supplies or other items of care and treatment for which charges are claimed were in fact even rendered or provided to or for Jeremy Wayne Bonner as claimed.